UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**MARIA DEL SOCORRO MALINOWSKI**
**INDIVIDUALLY AND AS A PERSONAL**
**REPRESENTATIVE OF THE ESTATE**
**OF BRYAN K. MALINOWSKI, DECEASED**
**AND ON BEHALF OF THE WRONGFUL**
**DEATH BENEFICIARIES OF BRYAN K.**
**MALINOWSKI**                                                    **PLAINTIFF**


**v.**                         **Case No. 4:25-CV-00486-LPR**


**UNITED STATES OF AMERICA,**
**BUREAU OF ALCOHOL, TOBACCO,**
**FIREARMS, AND EXPLOSIVES (ATF),**
**TIMOTHY BOLES, TROY DILLARD,**
**CLAYTON MERRILL, TYLER COWART,**
**MATTHEW SPRINKLES, JAMES BASS,**
**MICHAEL GIBBONS, CHRIS GRIGGS,**
**SHANNON HICKS, AND AMY NESS,**
**INDIVIDUALLY**                                                 **DEFENDANTS**

**BRIEF IN SUPPORT OF**
**SEPARATE DEFENDANT UNITED STATES OF AMERICA'S**
**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**Introduction**

Plaintiff Maria Del Socorro Malinowski has brought claims against the
United States of America under the Federal Tort Claims Act ("FTCA"), codified
at 28 U.S.C. §§ 2671 – 2680, in connection with the execution of a search
warrant for the residence she shared with her husband Bryan Malinowski.
Document No. 1.  The Complaint alleges nine separate counts against Separate
Defendant United States of America for: wrongful death (Count V); assault and

battery (Count VI); negligence (Count VII); intentional infliction of emotional distress (Count VIII); Civil Action by Crime Victim, manslaughter and negligent homicide (Count IX); Civil Action by Crime Victim, battery (Count X); Civil Action by Crime Victim, aggravated assault (Count XI); Civil Action by Crime Victim, criminal mischief (Count XII); and false imprisonment (Count XIII).   *Id.*

Regarding the tort claims arising from the forcible entry into the residence and post shooting conduct brought in Count VII (negligence), Count VIII (intentional infliction of emotional distress), Count XII (criminal mischief), and Count XIII (false imprisonment), this Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). The conduct upon which these claims is based falls within the discretionary function exception to the FTCA.   28 U.S.C. § 2680(a).   First, there was no federal rule, directive, or policy mandating how these agents were to execute this particular search warrant under these particular circumstances, other than the warrant itself.   Second, execution of a search warrant by law enforcement is susceptible to a policy analysis.   Finally, Plaintiff has failed to plead unconstitutional conduct in connection with these claims that would defeat the application of the discretionary function exception.   Thus, the United States retains its sovereign immunity, and Counts VII, VIII, XII, and XIII should be dismissed.

Count V (wrongful death), Count VI (assault and battery), Count VII (negligence), Count IX (crime victim manslaughter/negligent homicide), Count X (crime victim battery), and Count XI (crime victim aggravated assault) are based upon the use of deadly physical force.   However, under Arkansas

2

statutory law, a person is immune from suit for the use of deadly physical force against an initial aggressor using unlawful deadly physical force.  Ark. Code Ann. § 16-120-302; Ark. Code Ann. § 5-2-607.  Therefore, the United States retains its sovereign immunity on these claims because the Plaintiff fails to show that a private person would be liable in these circumstances under Arkansas state law.  28 U.S.C. § 1346(b).

Finally, declaratory relief is not available against the United States under the FTCA.  28 U.S.C. § 1346(b).  Neither are punitive damages.  28 U.S.C. § 2674.  Further, the United States is the only proper party in an FTCA action.  28 U.S.C. § 2679(b)(1).   Thus, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") must also be dismissed.  *Id.*

### Pertinent Factual Allegations

The Bureau of Alcohol, Tobacco, Firearms and Explosives opened a criminal investigation into Bryan Malinowski ("Malinowski") in December 2023.  Document No. 1 at ¶ 44.  On March 6, 2024, ATF Special Agent Troy Dillard applied for and obtained warrants to search the Malinowski residence and Malinowski's vehicle for evidence, including firearms, ammunition, electronics, sales records, and correspondence. *Id.* at ¶ 51. On the morning of March 19, 2024, seven ATF agents and task force officers (the individually named defendants, collectively "agents" or "federal agents") gathered in a "stack" outside the front door of the Malinowski residence. *Id.* at ¶¶ 136, 137.  A marked Little Rock Police Department patrol car parked just outside the house, which had windows across the front of it.  Exhibit 9, ATF Task Force Officer

Michael Gibbons Audio Statement, March 21, 2024 at 5:20. The agents were exposed, and the doorbell camera was blocked for safety. *Id.* at 05:55 - 06:06. Once the stack was assembled, at 6:02:58 a.m., entry team leader, ATF Special Agent Timothy Boles, gave the order to "initiate." *Id.* at ¶ 145; Exhibit 6, ATF Special Agent Matthew Sprinkles Audio Statement, March 21, 2024, at 04:03. A Little Rock police officer then activated the patrol vehicle's blue lights and siren, shutting off the siren after 1.5 seconds. Document No. 1 at ¶ 145. The blue lights remained flashing throughout the entry process. *Id.* at ¶ 148.

At the time the initiate command was given, Special Agent Sprinkles, began knocking and shouting on the door of the residence. *Id.* at ¶¶ 151, 156, 174; Exhibit 6 at 4:34. Special Agent Sprinkles paused knocking for four seconds, then resumed knocking. Document No. 1 at ¶ 153. As he was knocking, he shouted words including "police," "warrant," "open the door," and "ATF." Exhibit 9 at 7:52; Exhibit 4, ATF Special Agent Boles Audio Statement, March 21, 2024 at 8:43. The knocking lasted for nineteen seconds, from 6:02:58 a.m. to 6:03:17 a.m. *Id.* at ¶ 154. No one answered the door. Exhibit 6 at 5:02; Exhibit 4 at 10:16. Having received no response to agents' knocking on the door and announcing their presence, at 6:03:26 a.m. Special Agent Boles gave the order to breach the doors. Document No. 1 at ¶¶ 161, 163. ATF Special Agent Tyler Cowart began striking the outer glass doors with a tool to get them open. *Id.* at ¶¶ 161, 163. At 6:03:35, the front wooden door of the residence was opened by a battering ram. *Id.* at ¶ 164.

Once access to the house had been achieved, Special Agent Boles gave a "go" command. *Id.* at ¶¶ 173, 175.  Special Agent Sprinkles entered the residence with Special Agent Cowart behind him. *Id.*  As those agents entered the house, Special Agent Boles again yelled "police, police, police" when the door was open. Exhibit 4 at 11:30. Immediately upon entering the threshold of the front door, Malinowski shot at the agents, striking Special Agent Cowart in the foot. *Id.* at ¶ 188. Special Agent Cowart returned fire, hitting Malinowski. *Id.* at ¶ 189. Malinowski was subsequently transported to a hospital, where he was pronounced deceased on March 21, 2024. *Id.* at ¶¶ 227, 229.  Immediately following the shooting, Maria Malinowski was removed from the residence and placed in the back of the Little Rock Police Department patrol vehicle at approximately 6:07 a.m. *Id.* at ¶ 202.  She remained in the vehicle until 7:18 a.m. Exhibit 2, Little Rock Police Department Audio from Motor Vehicle Recording.  She was turned over to the Arkansas State Police at approximately 9:15 a.m. so she could be interviewed in connection with their investigation into the shooting. *Id.* at ¶ 222.

## Discussion of Authority

### A.    Standards of Review: Fed. R. Civ. P. 12(b)(1)

Regarding the forcible entry and post shooting conduct, the United States moves for dismissal for lack of subject matter jurisdiction on Count VII (negligence), Count VIII (intentional infliction of emotional distress), Count XII (criminal mischief), and Count XIII (false imprisonment).   Fed. R. Civ. P.

12(b)(1).  Motions under 12(b)(1) may assert either a "facial" or "factual" attack on jurisdiction.  *Moss v. United States*, 895 F. 3d 1091, 1097 (8th Cir. 2017).

However, where a party brings a facial attack on subject matter jurisdiction, review is limited to the face of the pleadings, the factual allegations in the pleadings are accepted as true, and they are viewed in the light most favorable to the nonmoving party.  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  Where a party brings a factual attack, a district court may look outside the pleadings to determine facts necessary to establish subject matter jurisdiction. *Id.*; *Two Eagle v. United States*, 57 F.4th 616, 620 (8th Cir. 2023).  This is a factual attack on subject matter jurisdiction.[1]  The party seeking to invoke federal jurisdiction bears proving jurisdictional facts by a preponderance of the evidence.  *Moss*, 895 F.3d 17 at 1097 (citing *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 347 (8th Cir. 2007)).

---

[1] Thus, the Court may consider facts outside the pleadings.  However, courts may actually consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Williams v. Employers Mut. Cas. Co.*, 845 F.3d 891, 903–04 (8th Cir. 2017) (quoting *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)). Because the Plaintiff has extensively referenced, quoted, and argued from the Arkansas State Police audio statements of the federal agents involved, as well as the Little Rock Police Department patrol unit motor vehicle recording, the Court should be able to consider the complete version of those references.  *See von Kaenel v. Armstrong Teasdale, LLP*, 943 F.3d 1139, 1143 (8th Cir. 2019).  *See also Khoja v. Orexigen Therapeutics, Inc.*, 899 F. 3d 988, 1002 (9th Cir. 2018).

**B.    Pre Shooting and Post Shooting Conduct Claims Barred by the Discretionary Function Exception, 28 U.S.C. § 2680(a):  Count VII (Negligence), Count VIII (Intentional Infliction of Emotional Distress), Count XII (Criminal Mischief), and Count XIII (False Imprisonment)**

**1.    The FTCA is a Limited Waiver of Sovereign Immunity**

The United States of America is immune from suit unless it consents to be sued.  *Hart v. United States*, 630 F.3d 1085, 1088 (8th Cir. 2011).  By enacting the FTCA, Congress carved out an exception to sovereign immunity for "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *F.D.I.C. v. Meyer,* 510 U.S. 471, 477 (1994) (quoting 28 U.S.C. § 1346(b)); *Day v. United States*, 865 F.3d 1082, 1086 (8th Cir. 2017).  The sovereign immunity of the United States "is jurisdictional in nature." *F.D.I.C. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  If sovereign immunity is applicable, this Court lacks subject matter jurisdiction. *Id.*

**2.    The Discretionary Function Exception to FTCA's Waiver of Sovereign Immunity**

However, under the FTCA, the United States does not waive immunity for "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a), *Hart*, 630 F.3d at 1088.    "The discretionary function exception 'marks the boundary between Congress' willingness to impose tort liability

upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.'" *Garey v. Langley*, 2021 WL 4150602, *6 (E.D. Ark. Sept. 13, 2021)(quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984)).  The discretionary function exception even applies to conduct that is negligent or wrongful.  *Buckler v. United States*, 919 F.3d 1038, 1045-46 (8th Cir. 2019); *Dalehite v. United States*, 346 U.S. 15, 32 (1953)(quoting 28 U.S.C. § 2608(a)'s "whether or not the discretion involved be abused").

Where the United States has not waived sovereign immunity under the FTCA, the district court lacks subject matter jurisdiction to hear the case.  *See Green Acres Enters. v. United States*, 418 F.3d 852, 857 (8th Cir. 2005); *see also Dykstra v. United States*, 140 F.3d 791, 795 (8th Cir.1998); *Hart,* 630 F.3d at 1088 (8th Cir. 2011).  In this Circuit, a plaintiff has the burden of proving the discretionary function exception does not apply.  *Id.* at 1089 n.3; *Riley v. United States*, 486 F.3d 1030, 1031 – 33 (8th Cir. 2007).

### a.    Discretionary Conduct

A two-part test determines when the discretionary function exception bars a claim.  *See United States v. Gaubert*, 499 U.S. 315, 322-23 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988).  First, the conduct at issue must be discretionary, involving an element of judgment or choice.  *Id.* at 322; *Berkovitz*, 486 at 536.  If a statute, regulation, or specific policy makes an employee's action mandatory, then the exception to the waiver of sovereign immunity does not apply.  *Id.*; *see also Demery v. United States Dep't of Interior*,

357 F.3d 830, 832-33 (8th Cir. 2004).    However, if no federal statute, regulation, or agency directive requires a government agent to take a specific course of action in a given situation, then the first step is satisfied.  *Dykstra,* 140 F.3d at 795. This presumption is rebuttable; however, a plaintiff must offer some evidence to rebut the presumption. *Chantal v. United States*, 104 F.3d 207, 212 (8th Cir.1997).

### b.    Susceptible to a Policy Analysis

Second, the Court must determine whether the judgment or choice is based upon "considerations of public policy."   *Dykstra*, 140 F.3d at 795 (quoting *Berkovitz*, 486 U.S. at 537).  "The basis for the discretionary function exception was Congress' desire to 'prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'"  *Demery,* 357 F. 3d at 833 (quoting *Berkovitz*, 486 U.S. at 536-37); *Riley v. United States*, 486 F.3d 1030, 1032 (8th Cir. 2007).  "Public policy" is defined as being "grounded in the social, economic or political goals of a statute and regulations."  *Gaubert*, 499 U.S. at 316.  It is not an agent's subjective intent that is the discretionary focus, but the "nature of the actions taken."  *Id.* at 325.    So long as a discretionary decision is "*susceptible* to policy analysis," the exception applies whether the United States actually engaged in a conscious policy balancing analysis or not.  *Id.* (emphasis added); *Herden v. United States*, 726 F.3d 1042, 1047 (8th Cir. 2013).  A plaintiff must rebut this presumption; otherwise, the

court will "presume the decision was based on public policy considerations." *Demery*, 357 F.3d at 833 (quoting *Dykstra*, 140 F. 3d at 796).

### 3. Forcible Entry: Count VII (Negligence), Count VIII (Intentional Infliction of Emotional Distress), Count XII (Criminal Mischief)

#### a. Details of Warrant Execution Are Discretionary

First, the execution of a search warrant involves elements of choice and judgment. *Dalia v. United States*, 441 U.S. 238, 257-58 (1979). "The Fourth Amendment says nothing specific about formalities in exercising a warrant's authorization." *United States v. Banks*, 540 U.S. 31, 35 (2003). In fact, the Supreme Court of the United States has held that "it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by a warrant – subject of course to the general Fourth Amendment protection 'against unreasonable searches and seizures.'" *Id.* at 257; *see also United States v. Merrell,* 842 F.3d 577, 581 (8th Cir. 2016)("[w]e generally leave the 'details of how best to proceed with the performance of a search authorized by a warrant' to the judgment of the officers responsible for the search.")(quoting *Dalia*, 441 U.S. at 257). In addition, as discussed below, 18 U.S.C. § 3109, Breaking Doors or Windows for Entry or Exit, allows discretion for forcible entry if law enforcement announces their authority and purpose and is refused admittance.

Here, there is no dispute that federal agents had a valid search warrant for the residence of Malinowski based upon the investigation of criminal activity involving firearms. Document No. 1 at ¶ 51; Exhibit 1, Application and

Search Warrant, March 6, 2024. It is also undisputed that federal agents executed the search warrant within the warrant's terms set forth by the magistrate judge. *Id.* While ATF does have a policy on the execution of search warrants, it does not mandate or proscribe any conduct beyond the requirements and limitations already imposed by the Fourth Amendment protection against unreasonable searches and seizures, and as codified in 18 U.S.C. § 3109. *See* Exhibit 11, ATF Order 3220.1B, Searches and Examinations at § 16(c). Regarding the timing of entry after agents believe admittance is refused, the ATF Order provides that the facts of each scene dictate what is reasonable. *Id.* at § 16(c)(2)(e). "A reasonable amount of time is determined by a totality of the circumstances." *Id.* There is no mandatory formula. *Id.* Thus, the manner in which these federal agents executed the search warrant on March 19, 2024 was within their discretion and judgment. *Dalia*, *supra.* The first step is satisfied. *Id.*

### b. Details of Warrant Execution Are Susceptible to a Policy Analysis

Second, the nature of the execution of a federal search warrant is based on public policy considerations. *Estate of Redd v. United States*, 171 F. Supp. 3d 1229, 1234-35 (D. Utah 2016), *aff'd*, 677 F. App'x 492 (10th Cir. 2017) (holding that in the executions of search and arrest warrants required considerations of "federal policy and social interests such as the allocation of federal resources, the safety of federal personnel, and the efficiency and expeditious retrieval of hundreds of fragile Native American artifacts."); *see*

*also, e.g., Guerrero v. United States*, No. CV 10-666-TUC-FRZ, 2013 WL 12177261, at *8 (D. Ariz. Sept. 18, 2013)(the execution of a search warrant is "a fundamentally discretionary  investigative determination replete with policy choices of the type underlying the exception").[2]  These include decisions based upon on the safety of federal agents.  *Redd*, 171 F. Supp. 1229, *12; *Guerrero*, 2013 WL 12177261, at *9.  Based upon similar reasoning, *see also Mesa v. United States,* 123 F.3d 1435, 1438 (11th Cir. 1997).

In *Mesa*, a federal tort action, federal agents from the Drug Enforcement Administration executed an arrest warrant on the wrong individual.  *Id.* at 1437.  Examining the case under the discretionary function analysis, the Eleventh Circuit held that the process of locating and identifying a subject prior to arrest is susceptible to a policy analysis.  *Id.* at 1438.  Specifically, the court held that in the execution of an arrest warrant federal agents may weigh the urgency of detaining the suspect, the potential threat to public safety, the possibility of the destruction of evidence, the protection of confidential sources, the protection of the agents involved, the secrecy of the mission, and the allocation of resources involved.  *Id.*   Because the execution of the arrest warrant "is fundamentally rooted in policy considerations," the "judicial second-guessing of [that] decision was not appropriate."  *Id.*  Thus, the agents'

---

[2]  Other district courts have reached the same conclusion on the execution of a search warrants.  *See also Lopez v. United States*, 2019 U.S. Dist. LEXIS 102516 at *10 (D. Ariz. June 19, 2019)("Plaintiff's negligence claims centers on a search and seizure warrant, the execution of which undisputedly raises policy considerations); *Oliveras v. United States*, 371 F.Supp.3d 105, 110 (S.D. N.Y. 2019)(use of flash bang weaponry during a search warrant execution and weighing risks of dangers for the use of different procedures involved questions of policy); *Andrade v. Chojnacki*, 65 F. Supp. 2d 431, 465 (W.D. Tex. 1999) (decisions regarding manner of executing search and arrest warrants, including use of tear gas and flash bangs, involved discretion and thus fell within the FTCA's discretionary function exception).

conduct fell within the discretionary function exception, and the case was dismissed for lack of subject matter jurisdiction. *Id.* at 1439.

Quoting this policy language of the Eleventh Circuit in a federal tort claim for failure to supervise an arrestee by a federal law enforcement officer, the United States Court of Appeals for the Eighth Circuit held that:

> In general, because it is the mandatory duty of law enforcement agents to enforce the law, decisions as to how to best fulfill that duty are protected by the discretionary function exception . . . [The agent is] required to consider his training, the need to restrain [the arrestee], the concern for [the arrestee's] safety, the public's safety, his available resources, and the information at hand in determining the proper course of action. All of these factors indicate that the decision regarding how to best effectuate an arrest warrant is 'fundamentally rooted in policy considerations, and that judicial second-guessing of this decision thus is not appropriate.'

*Hart,* 630 F. 3d at 1091 (quoting *Williams v. United States*, 314 Fed. App'x 253, 257-58 (11th Cir. 2009)(quoting *Mesa*, 123 F.3d at 1438).

The same reasoning applies here. All of the discretionary decisions at issue at this particular scene regarding how best to execute this particular search warrant are rooted in policy. *Id.* The nature of the execution of the warrant was susceptible to policy considerations, including but not limited to, allocation of agency resources, urgency of entry, and the safety of the agents involved. *Id.* Accordingly, both prongs of the two-part the discretionary function test are satisfied, and the presumption favors the United States. *Gaubert, supra*; *Berkovitz, supra*; *Dykstra, supra*. Therefore, regarding the pre shooting conduct, Count VII (negligence), Count VIII (intentional infliction of

emotional distress), and Count XII (criminal mischief), of the Plaintiff's Complaint against the United States should be dismissed for lack of subject matter jurisdiction. 28 U.S.C. § 2680(a); Fed. R. Civ. P. 12(b)(1).

### c.   The "Constitutional Claims" Exclusion to the Discretionary Function Exception

Although the United States is immune from suit for constitutional violations under the FTCA, in the discretionary function analysis, the United States Court of Appeals for the Eighth Circuit has held that "federal officers do not have discretion to commit constitutional violations." *Raz v. Mueller*, 389 F. Supp. 2d 1057, 1076 (2005), *aff'd* 215 Fed. App'x 571 (8th Cir. 2007)(citing *Raz v. United States*, 343 F. 3d 945 (8th Cir. 2003).[3]  Maintaining the burden of proving subject matter jurisdiction, the Plaintiff must therefore allege distinct conduct of by these federal agents that was unconstitutional to avoid the application of the discretionary function exception here.  *Id.*; *Moss*, 895 F. 3d 17 at 1097.

The Plaintiff's Complaint alleges that the federal agents violated the Malinowskis' Fourth Amendment constitutional right to be free from unreasonable searches and seizures, citing also to the codification at 18 U.S.C. § 3109.[4]  *See* Document No. 1 at ¶¶ 233 - 251.   Regarding the manner of execution of a search warrant, 18 U.S.C. § 3109 states that:

> The officer may break open any outer or inner door or window of a house, or any part of a

---

[3] *Contra Shivers v. United States*, 1 F. 4th 924, 929-934 (11th Cir. 2021); *Kiiskila v. United States*, 466 F.2d 626 (7th Cir. 1972).
[4] *See also,* Count I (Failure to Knock and Announce); Count II (Unlawful Entry) against the individual defendants.

house, or anything therein, to execute a search
warrant, if, after notice of his authority and
purpose, he is refused admittance or when
necessary to liberate himself or a person aiding
him in the execution of the warrant.

*Id.* Thus, federal agents were to provide notice of their authority and
purpose upon execution of this search warrant, and, if they were "refused
admittance," allowed to forcibly enter. *Id.*; *Banks*, 540 U.S. at 42. Whether
officers have waited long enough after knocking to infer that they have been
constructively denied admittance "does not turn on any hard and fast time
limit, but depends upon the circumstances confronting the officer serving the
warrant." *United States v. Stropes,* 387 F.3d 766, 772 (8th Cir. 2004) (quoting
*United States v. Lucht*, 18 F.3d 541, 549 (8th Cir. 1994)). In determining
whether an execution of a search warrant is constitutional under the Fourth
Amendment, the analysis is made from the viewpoint of the officers seeking
entry. *United States v. Vesey*, 338 F.3d 913, 915 (8th Cir. 2003).

The Eighth Circuit has recognized federal agent discretion as reasonable
when "the need to force entry may result from danger to the safety of the
entering officers." *Id.*; *see also Stropes*, 387 F.3d at 773 (holding that the lack
of criminal history or a history of violence are not prerequisites to suspect
danger; rather, when the objects of a search warrant are firearms the concern
for officer safety was warranted). In evaluating the inference that agents were
denied admittance after knocking and announcing their authority, an
approximately twenty second time frame has been often held as a reasonable
time frame under the circumstances of different cases. *See Stopes*, 387 F.3d

at 772 (five second delay between repeatedly knocking and announcing, and a fifteen second wait after a final knock held to be reasonable based on the fact that "officers suspected the presence of drugs and guns and reasonably believed their yelling and pounding on the door would alert the people in the house of their presence"); *Vesey*, 338 F.3d at 916 (a ten second delay between knock and announce and entry held to be reasonable where the residence was small and officers suspected the presence of drugs, size of apartment, and time of day); *United States v. Nichols*, 344 F.3d 793, 798 (8th Cir. 2003) (finding "a wait of at least twenty seconds" after knocking and announcing presence and purpose before forcibly opening door at 7 a.m. to be reasonable involving a search for cocaine); *United States v. Goodson*, 165 F.3d 610, 612, 614 (8th Cir. 1999) (knock-and-announce requirement satisfied when, at 1:44 a.m., state law enforcement knocked twice, announced presence, and waited twenty seconds before forcibly entering home considering the potential for destruction of crack cocaine and jeopardizing officer safety).

In the instant Complaint, Plaintiff alleges that the agents failed to wait a reasonable amount of time after knocking and announcing to enter the residence, in violation of the Fourth Amendment. Document No. 1 at ¶¶ 343 - 345. The Complaint alleges that the command to initiate was given at 6:02:58 a.m. Document No. 1 at ¶ 145. The Complaint alleges that after the command to initiate was given, Special Agent Sprinkles began "shouting and knocking on the glass door" of the residence. *Id.* at ¶ 151. That knock and announce paused for four seconds, and it then resumed. *Id.* at ¶ 151, 153. The Plaintiff

alleges that entry into the residence began nineteen seconds later at 6:03:17 a.m. *Id.* at ¶ 154. The Plaintiff alleges that the agents completed entry into the residence at 6:03:35. *Id.* at ¶164.  Thus, according to the Complaint, thirty-seven seconds elapsed between the initiation of the knock and announce and actual entry into the residence. *Id.*

The Complaint also acknowledges that Malinowski was being investigated for firearms violations, raising the possibility (which was borne out) that he would be armed when the agents entered the residence. *Id.* at ¶ 51.  Under the circumstances as alleged in the Complaint, Plaintiff has failed to state a plausible Fourth Amendment violation in connection with the entry into the residence. *Vesey*, 338 F.3d at 915.

Moreover, the Plaintiff's Complaint quotes excerpts from audio statements by federal agents to the Arkansas State Police in the days following March 19, 2024.[5]  A complete review of those statements offers the context from the agents' point of view as required by *Vesey*, 338 F.3d at 915:

- The application for the search warrant by Special Agent Dillard included information of suspected illegal dealing in firearms by Bryan Malinowski and set forth probable cause to believe his residence contained evidence thereof, including firearms, ammunition, electronics, sales records, and correspondence information. Exhibit 1.

- A search warrant was signed for the search of a residence for criminal activity involving firearms.  *Id.*; Document No. 1 at ¶ 51.

- ATF is a "small office . . . so anytime anybody who's running an investigation the other people know what's going on because we're one group." Exhibit 4 at 05:18.

---

[5] *See, e.g.,* ¶ 145; ¶ 146, ¶ 147, ¶ 151, ¶ 157, ¶ 158, ¶162, ¶ 163, ¶ 165, ¶ 166, ¶167, ¶ 169, ¶170, ¶ 172, ¶173, ¶176.

- "The target house was the second, second house on the right, I believe, basically at the dead end of the cove on the right.  All the cars pulling in because I am the extraction my vehicle stops . . . most everybody kind of pulled all the way around in the cove in various ways, which is unusual. Usually, we kind of stay out of sight but because of the car number, cars and the location of the house, pretty much, we were exposed as soon as we pulled into the cove." Exhibit 9 at 03:24.

- There were "windows all across the front of the house" and from any room you could see outside.  *Id.* at 05:20.

- Federal agents approached the door of the Malinowski residence after 0600, the time prescribed by the search warrant.  Document 1 at ¶145.

- "There is a doorbell Ring camera off to the right, so we already knew obviously when we hit the corner. Lot of exposure for us; all of that is taken into account."  Exhibit 9 at 05:55 - 06:06.

- The doorbell camera was blocked for safety reasons.  *Id.* at 06:50 – 07:01.

- The "initiate" command was given by Special Agent Boles, the team leader at 6:02:58 a.m.  Document No. 1 at ¶145.

- The initiate command is given to begin the knock and announce the presence of law enforcement to give the homeowner time to answer the door.  Exhibit 6 at 04:08.

- Upon receiving the initiate command, Little Rock Police Department Officer [Olen] Lakey initiated the marked patrol unit's blue lights and chirped the siren. Document No. 1 at ¶ 145.

- The Little Rock Police Department's patrol unit was parked outside the Malinowski residence. Document No. 1 at ¶ 117.

- The Little Rock Police Department patrol unit's blue lights remained activated during the agent's knocking, announcing, and entry into the residence.  Document No.1 at ¶ 148.

- Special Agent Sprinkles began knocking on the front glass door[6] of the residence and shouting the presence of law enforcement. Document No. 1 at ¶¶ 151, 154; Exhibit 6 at 04:34.

- Special Agent Boles stated he heard banging and announcing, "bang, bang, bang, police, open the door, warrant, bang, bang, bang." Exhibit 4 at 08:43.

- Special Agent Sprinkles was repeatedly knocking and stated "police," "search warrant," at some point "ATF." Exhibit 9 at 07:52.

- There was "nonstop hitting, 10, 15 seconds at a time, house all lit up." Exhibit 9 at 08:20.

- Special Agent Boles noticed that the blinds on the large window on the front on the house were at a 45 degree angle. Exhibit 4 at 09:32.

- Special Agent Boles saw a light on in the house. *Id.* at 09:32.

- Special Agent Boles could see into the house and see the ceiling through the blinds. *Id.* at 09:37.

- Special Agent Sprinkles continued knocking on the door. Document No. 1 at ¶153.

- No one answered the door. Exhibit 6 at 05:02; Exhibit 4 at 10:16.

- Special Agent Boles, the team leader, was keeping time in his head during the knocking and announcing of law enforcement. Exhibit 4 at 10:26.

- The knocking and announcing lasted approximately nineteen seconds according to the audio of the Little Rock Police Department patrol unit dash camera. Document No. 1 at ¶ 154.

- "And I remember thinking to myself this is taking a while, and you know, we were sitting out here. And you kind of go through this, it's like kind of a (knocking on a table) you got a clock in your head. You know, I've done this several times I got a clock in my

---

[6] Sprinkles felt the effects of how hard he knocked on the door days after March 19, 2024. Exhibit 6 at 04:49 – 05:01.

head it's like we're out here we're exposed." Exhibit 4 at 10:19; 10:26.

- Special Agent Cowart felt like they were at the door "forever." Exhibit 10, Audio Statement of Special Agent Tyler Cowart, March 21, 2024 at 06:03.

- Special Agent Cowart believed that "It [was] not a good spot to be in front of the door." *Id.* at 06:09.

- Special Agent Cowart said they were at the door "longer than we would normally wait." *Id.* at 06:17.

- Special Agent Boles decided to give the order to breach the door for entry into the residence. *Id.* at 10:37.

- A Halligan tool was used to open the initial set of glass doors. The process was loud in nature. Exhibit 4 at 10:47.

- After the glass doors were open, another agent rammed the front wooden door open. *Id.* at 11:06.

- At that time, Special Agent Boles gave the command "go," ordering entry into the residence. *Id.* at 11:28.

- TFO Gibbons stated they were wearing "ATF shirts covered by a vest. Black vest, radio and cuffs...ATF patch with silver reflective letters across with 'POLICE' and a green helmet with a light on it." Exhibit 9 at 18:29.

- When the door was opened, Special Agent Boles yelled, "Police, Police, Police!" announcing, again, their authority and presence. Exhibit 4 at 11:30.

Thus, from the agents' perspective, the totality of the circumstances here does not constitute an unreasonable search and seizure as to the entry of the residence in this case, to sufficiently escape the application of the discretionary function exception. 28 U.S.C. § 2680(a). As such, the United States retains its sovereign immunity as to the forcible entry, and Count VII (negligence), Count

VIII, (intentional infliction of emotional distress), Count XII (criminal mischief) against it should be dismissed.  Fed. R. Civ. P. 12(b)(1).

### 4.    Post Shooting Conduct: Preservation of the Scene; Count XIII (False Imprisonment)

Plaintiff alleges the tort of false imprisonment due to the placement of her in a Little Rock Police Department patrol car immediately following the shooting.[7] Document No. 1 at ¶¶ 393 – 403.  The tort of false imprisonment is defined as "the *unlawful* violation of the personal liberty of another, consisting of detention without sufficient legal authority."  *See Limited Stores v. Wilson-Robinson*, 317 Ark. 80, 83, 876 S.W.2d 248, 250 (1994)(emphasis added).  In addition, "any express or implied threat of force whereby one does not wish to go is an imprisonment." *Id.*   As set forth below, this claim also falls within the discretionary function exception and should be dismissed.   28 U.S.C. § 2680(a).

### a.    Details of Preserving the Scene and Completing the Search Warrant Are Discretionary

"A warrant for the search of contraband founded on probable cause carries with it the limited authority to detain occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981); *Muehler v. Mena*, 544 U.S. 93, 98 (2005); *Mountain Pure, LLC v. Roberts*, 814 F.3d 928, 934 (8th Cir. 2016).  To do so, law enforcement officers are allowed to weigh certain governmental interests: "to prevent flight in the event that incriminating evidence is found; to minimize the risk of harm to the officers;

---

[7] *See also,* Count IV (Illegal Detention of Maer Malinowski) against the individual defendants.

and to facilitate the orderly completion of the search." *Mountain Pure,* 814 F.3d at 934)(quoting *Muehler,* 544 U.S. at 98.  Thus, law enforcement officers may exercise choice and judgment when completing the search of a premises.  *Id.*

Regarding what to do with an individual who finds herself in the middle of a potential crime scene that needs to be preserved for a criminal investigation and searched pursuant to a warrant, ATF has no specific mandate.  Exhibit 11, ATF Order 3220.1B, Searches and Examinations at § 18; Exhibit 12, ATF Order 8200.3C, Processing the Scene at Chapter A(4).  In ATF Order 3220.1B, ATF agents are given the discretion to determine whether or not detention of occupants during a premises search is necessary, based upon the *Summers* factors.  Exhibit 11 at § 18(a).  Reasonable force is permitted to do so.  *Id.*  In addition, following a shooting incident, ATF Order 8200.3C provides that the scene may be immediately secured for processing by the investigatory local law enforcement agency.  Exhibit 12 at Chapter A(4).  Thus, because federal agents were permitted to use discretion in preserving the scene and premises, the first step of the discretionary function analysis is satisfied. *Dalia, supra.*

### b.    Details of Preserving the Scene and Completing the Search Warrant Are Susceptible to a Policy Analysis

In addition, the nature of preserving a crime scene and completing the search of a premises pursuant to a warrant is susceptible to a policy analysis. In weighing the governmental interest of completing an orderly search, law enforcement officers may consider the safety of the officers involved, protection

of the property at issue, and the risks of removal or destruction of evidence. *See Berget v. City of Eagan*, No. CV-08-4728 (MJD/FLN), 2010 WL 11602636 *8 (D. Minn. Mar. 23, 2010)(8th Cir. 2010), *aff'd*, 398 Fed. App'x 588 (8th Cir. 2010). Further, other concerns have included the distraction of officers, or a detainee "simply get[ting] in the way." *Bailey v. United States*, 568 U.S. 186, 197 (2013).

Thus, the nature of the decision to place Plaintiff in a heated police car to keep her outside the premises that had yet to be investigated and searched is susceptible to a policy analysis. *Herden*, 726 F.3d at 1047. How these federal agents chose to fulfill their duty here is rooted in policy considerations. *Hart*, 630 F.3d at 1091. The agents' conduct of placing Plaintiff in a patrol car following the shooting in anticipation of a criminal investigation and completion of the search by two additional and separate law enforcement agencies falls within the discretionary function exception. 28 U.S.C. § 2680(a); Dalia, *supra*. Count XIII (false imprisonment) of the Plaintiff's Complaint must be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

### c.   "Constitutional Claim" Exception Does not Apply

Plaintiff alleges officers "falsely arrested" and illegally detained her, presumably alleging a violation of rights under the Fourth Amendment. Document No. 1 at ¶ 396. However, she has failed to sufficiently plead that any seizure of her person was unreasonable under the Fourth Amendment here to escape the application of the discretionary function exception to her federal tort claim.

As set forth above, any detention of the Plaintiff occurred because of the investigation into the shooting and the subsequent search of the residence. Document No. 1 at ¶ 396.  Officers may detain occupants of a premises when executing a search warrant in light of certain governmental interests.  *Mountain Pure, LLC,* 814 F.3d at 934.  Such a "detention represents only an incremental intrusion on personal liberty when the search of a home has been authorized by a valid warrant." *Summers*, 452 U.S. at 703. The existence of a search warrant provides an objective justification for the detention. *Id.*  Because a judicial officer has determined probable cause exists to believe that someone in the home has committed a crime, the neutral magistrate has given police "special authorization to thrust themselves into the privacy of a home." *Id.*  "An officer's authority is categorical; it does not depend on the 'quantum of proof justifying the detention or the extent of the intrusion to be imposed by the seizure.'" *Mena*, 544 U.S. at 98 (quoting *Summers*, 452 U.S. at 705).

Here, the execution of the search warrant unexpectedly turned into a crime scene before the search could be performed.  Document No. 1 at ¶ 192. Thus, a wholly separate law enforcement agency, the Arkansas State Police, was called to investigate the shooting, and the scene had to be preserved.  *Id.* After that, the search warrant for probable cause that the premises contained numerous firearms still had to be executed.  Exhibit 1, Application and Search Warrant.  However, this could not be done by the original federal agents involved. Document No. 1 at ¶¶ 223 – 224; Exhibit 12 at Chapter A(3)(c)(1). Rather, ATF agents from Oxford, Mississippi had to be called upon to travel to

Little Rock, Arkansas to complete the search of the residence. *Id.* at ¶¶ 224 – 226.

Thus, immediately following the shooting, the Plaintiff was placed in a running, heated, marked Little Rock Police Department patrol car to protect her from the cold weather just outside her home until she could be taken to the Arkansas State Police to be interviewed. Document No. 1 at ¶ 200; Exhibit 2, Little Rock Police Department Motor Vehicle Recording at 5:16:20. The Plaintiff was in the patrol car from approximately 6:05 a.m. until 7:18 a.m. *Id.* While in the car, officers checked on her several times, asking if she was warm enough and provided her with a blanket. Exhibit 2 at 6:24:32, 6:35:57. She was then taken to a nearby fire station to use the restroom. Document No. 1 at ¶¶ 213 – 214. There is nothing about the conduct of these agents and officers that was unlawful, unreasonable, unavoidable, or unconstitutional after the shooting occurred. The false imprisonment claim is barred by the discretionary function exception and should be dismissed. 28 U.S.C. § 2680(a); Fed. R. Civ. P. 12(b)(1).

## C. Claims Barred for Failure to State a Claim for Which a Private Person Would be Liable Under Arkansas Law 28 U.S.C. § 1346(b)(1)

### 1. Common Law Claims for Bodily Injury: Counts V (Wrongful Death), Count VI (Assault and Battery), and Count VII (Negligence) Should be Dismissed as Justified Use of Deadly Force Under the Arkansas Civil Use of Force Statute

Under the FTCA, the United States has waived its sovereign immunity only to the extent that a private person would be liable under the law of the place where the conduct alleged occurred. 28 U.S.C. § 1346(b). "It may seem

counterintuitive, but what matters for getting [an FTCA] case into *federal* court is *state* law." *Hutchinson v. United States*, 71 F.4th 1115, 1117-19 (8th Cir. 2023).  For the bodily injury to Malinowski, the Plaintiff brings the common law claims of wrongful death[8] (Count V), assault and battery (Count VI),  and negligence (Count VII).

The return of fire by Special Agent Cowart was justified under Arkansas law pursuant to Arkansas's civil use of deadly physical force statute.  Ark. Code Ann. § 16-120-302(a).  Therefore, because a private person would not be liable for these claims under Arkansas law, these claims fall outside the FTCA's waiver of sovereign immunity, and the Court lacks subject matter jurisdiction here.  28 U.S.C. § 1346(b); *Hutchinson*, 71 F.4th at 1121; Fed. R. Civ. P. 12(b)(1).

In Arkansas, "[a] person is immune from civil action for the use of deadly physical force against another person who is an initial aggressor if the use of the deadly physical force was in accordance with [Arkansas Code Annotated] § 5-2-607." Ark. Code Ann. § 16-120-302. Arkansas Code Annotated § 5-2-607 states in relevant part:

> (a) A person is justified in using deadly physical force upon another person if the person reasonably believes that the other person is:
>
> (1) Committing or about to commit a felony involving physical force or violence;

---

[8] Under Arkansas law, a wrongful death claim "is derivative in nature from the original tort, and where the underlying tort action is no longer preserved, the wrongful death action is barred as well." *Brown v. Pine Bluff Nursing Home*, 359 Ark. 471, 475, 199 S.W.3d 45, 48 (Ark. 2004); *Day v. United States*, 865 F.3d 1082, 1087-88 (8th Cir. 2017).  Thus, if the underlying assault, battery, and crime victim claims fail, so does the claim for wrongful death on behalf of the statutory beneficiaries. *Id.*

(2) Using or about to use unlawful deadly physical force;

or

(3) Imminently endangering the person's life or imminently about to victimize the person from the continuation of a pattern of domestic abuse.

(b) A person is not required to retreat before using deadly physical force if the person:

(1) Is lawfully present at the location where deadly physical force is used;

(2) Has a reasonable belief that the person against whom the deadly physical force is used is imminently threatening to cause death or serious physical injury to the person or another person;

(3) Except as provided under § 5-2-606(b)(2)(B), is not the initial aggressor and has not provoked the person against whom the deadly physical force is used;

(4) Is not committing a felony offense of possession of a firearm by certain persons, § 5-73-103, with the firearm used to employ the deadly physical force, unless the person is in or at the person's dwelling or in the curtilage surrounding the person's dwelling;

(5) Is not engaged in criminal activity that gives rise to the need for the use of deadly physical force at the time the deadly physical force is used; and

(6) Is not engaged in any activity in furtherance of a criminal gang, organization, or enterprise as defined in § 5-74-103.

The facts, as alleged in the Complaint, demonstrate that the use of deadly force by employees of the United States was justified in accordance with Arkansas law. First, Plaintiff admits that Malinowski was the initial aggressor in the use of deadly physical force. Document No. 1 at ¶¶ 188-189; Ark. Code

27

Ann. § 16-120-302.   Specifically, Malinowski fired his gun, striking Special Agent Cowart, and Special Agent Cowart returned fire.   *Id.*   Thus, an analysis under Ark. Code Ann. § 5-2-607 is required.   *Id.*

Special Agent Cowart was justified in using deadly physical force under Arkansas law because he had a reasonable belief that Malinowski was using unlawful deadly force against federal agents by shooting at them upon their lawful entry.   Ark. Code Ann. § 5-2-607(2)(a); Exhibit 10.   Federal agents were equipped with a search warrant.   Document No. 1 at ¶ 51.   Having knocked on the door and announced the presence of law enforcement, and refused admittance as set forth above, the agents were lawfully present in the residence.   *Section B, infra.*   Additionally, Special Agent Cowart described the events which lead up to his return of fire:

- "The call was to enter the residence."   Exhibit 10 at 07:06; *see also* Exhibit 4 at 11:28.

- "As soon as Matt goes in, I hear him say "oh, shit" as he is turning to his left, he is saying "oh shit" he's falling down, just as that was happening, I hear a gunshot." *Id.* at 07:18-07:22.

- "I'm at the threshold of the door I look left luckily." *Id.* at 07:39

- "I see two flashes." *Id.* at 07:45.

- "What I know is a muzzle flash, due to what I have been around before, um, shooting wise, at the range and everything, I know what a muzzle flash is." *Id.* at 07:45 – 07:58.

-  "I see one aiming down towards Matt and there's a whole redirection on when it came up to me, and I returned fire." *Id.* at 07:47-08:07.

- "As soon as I entered, there was a light on down the hallway where the suspect was and it was backlighting him almost." *Id.* at 09:24 – 09:29.

- "When I entered the house, I could see the gun." *Id.* at 09:35.

- "A giant silver pistol and it totally redirected, but yeah, with the light on in the house, I – there was no doubt that that was a gun you know went off." *Id.* at 09:44 – 09:52.

- Arkansas State Police: "Do you know how far he was away from you?" *Id.* at 09:54.

- "When I took the shot, um, he was, if I had to guess, 15 to 20 feet." *Id.* at 09:57-10:02.

- Arkansas State Police: "The guy who was shooting at you, what was his stance?" *Id.* at 10:08.

- "I guess call it a shooting stance, both arms up, kind of hunched over." *Id.* at 10:08.

- "Taking aim at us coming in." *Id.* at 10:18.

- "I heard one [shot] when I was going through the door, I remember seeing two flashes, one towards Matt and one towards me." *Id.* at 10:28 – 11:04.

- Arkansas State Police: "How many times do you think you shot?" *Id.* at 11:08.

- "Three to four." *Id.*

- "I thought Matt was shot and then I realized he was shooting at me I was scared out of my mind." *Id.* at 13:29.

- "I told Troy (Dillard) I was shot in the foot." *Id.* at 14:11.

- "I never made it past three feet into the house." *Id.* at 15:11-15:15.

Thus, Special Agent Cowart's belief that Malinowski was shooting at lawfully present agents was reasonable. Ark. Code Ann. § 5-2-607(a)(2). Therefore, his returned fire was justified. Ark. Code Ann. § 16-120-302.

Further, the agents were not required to retreat before employing deadly force. Ark. Code Ann. § 5-2-607(b). The search warrant conferred the right to be lawfully present at the location where the shooting occurred. Ark. Code Ann. § 5-2-607(b)(1). In addition, Special Agent Cowart's belief that Malinowski was "imminently threatening to cause death of serious physical injury" to federal agents by Malinowski's shooting at them as they entered the residence was a reasonable belief. Ark. Code Ann. § 5-2-607(b)(2); Document No. 1 at ¶¶ 188 -189. Because federal agents were not in the illegal possession of a firearm per Ark. Code Ann. § 5-73-103, not engaged in criminal activity, and not engaged in the furtherance of gang activity, the remaining requirements of Arkansas Code Annotated § 5-2-607(b) are satisfied.

The use of deadly force against Malinowski was justified under Arkansas law, and, therefore, there can be no civil suit. Ark. Code Ann. § 16-120-302(a); Ark. Code Ann. § 5-2-607. Thus, Plaintiff's Complaint fails to show state law common law liability as to Count V (wrongful death), Count VI (assault and battery), and Count VII (negligence), and the United States retains its sovereign immunity from suit. 28 U.S.C. § 1346(b).

**2. Statutory Claims Pursuant to the Civil Action by Crime Victim Statute Should Also be Dismissed as Justified Use of Deadly Force Under the Arkansas Civil Use of Force Statute: Manslaughter and Negligent Homicide (Count IX), Battery (Count X), Aggravated Assault (Count XI) and Criminal Mischief (Count XII)**

The Plaintiff also brings claims based on the same conduct under the Ark. Code Ann. § 16-118-107, Civil Action by a Crime Victim, for manslaughter

and negligent homicide (Count IX), battery (Count X), and aggravated assault (Count XI) claiming civil monetary relief because the agents' conduct amounts to these felonies.[9]

The return of fire by federal agents was justified under Arkansas law pursuant to Arkansas's civil use of deadly physical force statute.  Ark. Code Ann. § 16-120-302(a); Ark. Code Ann. § 5-2-607.    Thus, none of these enumerated felonies was committed.  *Id.*  Therefore, because a private person would not be liable for these claims under Arkansas law, these claims fall outside the FTCA's waiver of sovereign immunity, and the Court lacks subject matter jurisdiction over those claims as well.  28 U.S.C. § 1346(b); *Hutchinson v. United States*, 71 F.4th at 1121; Fed. R. Civ. P. 12(b)(1).

### 3.   Statutory Claim Pursuant to the Civil Action by Crime Victim Statute for Criminal Mischief (Count XII) Fails Under 18 U.S.C. § 3109

Count XII alleges felony criminal mischief.   Document No. 1 at ¶¶ 388 – 392.   As set forth above, this claim should be dismissed based upon the discretionary exception.  *Section B, infra.*    However, even if it survived the discretionary function analysis, criminal mischief in Arkansas is committed when a person purposely and *without legal justification* destroys or causes damage to any property of another person. Ark. Code Ann. 5-38-203(a)(1)(emphasis added). The agents were in possession of a legally valid warrant to search the residence.  Document No. 1 at 51.  Federal officers are permitted by statute to break open a door to execute a search warrant if, after

---

[9] *See also,* Count III (Excessive Force) against the individual defendants.

giving notice of their purpose and authority, they are refused entry. 18 U.S.C. § 3109.   As set forth extensively above, they did so.   *Section B, infra.*   In addition, for reasons set forth above, Special Agent Cowart was justified in his return of fire, causing any property damage inside the residence.   *Section C, infra.*   This fails under state law for lack of the requisite intent, and the United States retains its sovereign immunity.   28 U.S.C. § 1346(b).   *Id.*

### 4.    Intentional Infliction of Emotional Distress (Count VIII): Failure to Show State Law Liability

"In order to prove the intentional tort of IIED, or outrage, a plaintiff must prove the following elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his or her conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it." *Chandler v. Wal-Mart Stores Inc.,* 2016 Ark. App. 372, 13, 498 S.W.3d 766, 772–73 (2016).

A person acts willfully and wantonly when he or she knows or should know in light of the surrounding circumstances that this conduct will naturally and probably result in emotional distress and continues such conduct in reckless regard of the consequences. *Travelers Ins. Co. v. Smith,* 338 Ark. 81, 88, 991 S.W.2d 591 (1999). By extreme and outrageous conduct, it means it is so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. *Id.* Emotional distress must be reasonable and justified under the circumstances and must be so severe that no reasonable person could be expected to endure it. *Id.*

Arkansas courts view the tort of outrage narrowly and require clear-cut proof to establish the elements in outrage cases. *Croom v. Younts*, 323 Ark. 95, 913 S.W.2d 283 (1996). Merely describing the conduct as outrageous does not make it so. *Renfro v. Adkins*, 323 Ark. 288, 914 S.W.2d 306 (1996). "We have taken a strict approach in determining the validity of outrage cases, and recognized that the tort of outrage should not and does not open the doors of the courts to every slight insult or indignity one must endure in life." *Travelers Ins. Co.* 338 Ark. 81, 89 (1999), *citing Tandy Corp. v. Bone*, 283 Ark. 399, 405, 678 S.W.2d 312, 315 (1984).

As explained above, the agents were justified in their actions here. Acting in a way in which one has the legal right to act does not "equate with outrageous conduct necessary for the tort of outrage." *Ross v. Patterson*, 307 Ark. 68, 71, 817 S.W.2d 418, 420 (1991).  This is not sufficient to show state law liability for intentional infliction of emotional distress. *See Duggar v. City of Springdale*, 2020 Ark. App. 220, 11, 599 S.W.3d 672, 682 (2020) (holding that a claim that conduct caused "severe emotional distress" was not sufficient to state a claim for outrage).

**D.**   **Proper Relief and Proper Parties**

In the Complaint, the Plaintiff seeks an award of "compensatory damages and declaratory relief" against the United States under the FTCA. Document 1 at ¶ 278. District courts lack subject matter jurisdiction to award injunctive and declaratory relief under the FTCA. *See Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 863 (10th Cir. 2005). Accordingly, the Plaintiff is not entitled to seek declaratory relief for the claims brought under the FTCA.

In addition, punitive damages are not recoverable against the United States under the FTCA.  28 U.S.C. § 2674.  Finally, the United States is the only proper party defendant in a FTCA cause of action.  28 U.S.C. § 2679(b)(1). Accordingly, the Bureau of Alcohol, Tobacco, Firearms and Explosives should be dismissed.  *Id.*; *F.D.I.C. v. Meyer*, 510 U.S. 471, 476-77 (1994).

<u>**Conclusion**</u>

For the foregoing reasons, Separate Defendant, the United States of America, respectfully requests that its Motion to Dismiss for Lack of Subject Matter Jurisdiction be granted and that the claims against it be dismissed.

Respectfully submitted,

Jonathan D. Ross
United States Attorney
Eastern District of Arkansas


Shannon S. Smith
Arkansas Bar No. 94172
Lindsey Mitcham Lorence
Arkansas Bar No. 96183
Assistant United States Attorneys
425 W. Capitol Ave, Suite 500
Little Rock, Arkansas 72201
(501) 340-2600
shannon.smith@usdoj.gov
lindsey.lorence@usdoj.gov