## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

**MARIA DEL SOCORRO MALINOWSKI, individually and as personal representative of the Estate of Bryan K. Malinowski, deceased, and on behalf of the wrongful death beneficiaries of Bryan K. Malinowski;**

**Plaintiff;**

**v.**

**UNITED STATES OF AMERICA; BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES (ATF), TIMOTHY BOLES, TROY DILLARD, CLAYTON MERRILL, TYLER COWART, MATTHEW SPRINKLE, JAMES BASS, MICHAEL GIBBONS, CHRIS GRIGGS, SHANNON HICKS, and AMY NESS.**

**Defendants.**

**Case No. 4:25-CV-00486-LPR**

## <u>BRIEF IN OPPOSITION TO DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ i

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ....................................................................................................... 2

      A.    LEGAL STANDARD ................................................................................ 5

      B.    PERTINENT ALLEGATIONS IN THE COMPLAINT ............................ 7

      C.    THE FTCA'S DISCRETIONARY FUNCTION EXCEPTION DOES
            NOT WARRANT DISMISSAL ................................................................ 11

            1.    The Discretionary Function Exception is Inapplicable ................. 12

                  a.    Forcible Entry – Count VII (Negligence), Count VIII (IIED),
                        Count XII (Criminal Mischief) ............................................ 16

                  b.    Post Shooting Conduct – Count XIII (False Imprisonment) .... 26

      D.    The United States is Not Shielded from Immunity by State Statute ........... 28

            1.    Defendants Were the Initial Aggressors, Acted Unlawfully and
                  Created the Threat, and Therefore Cannot Assert Justification
                  Defense ........................................................................................ 29

            2.    Justification Is Not a Valid Defense for Claims Alleging Recklessness
                  or Negligence .............................................................................. 32

III.  PLAINTIFF PROPERLY SOUGHT COMPENSATORY DAMAGES ................. 35

IV.   ANY RULING ON THE GOVERNMENT'S MOTION SHORT OF DENIAL
      REQUIRES DISCOVERY INTO THE JURISDICTIONAL ISSUES RAISED ..... 35

CONCLUSION ............................................................................................................... 38

CERTIFICATE OF SERVICE ........................................................................................ 39

i

**TABLE OF AUTHORITIES**

**Cases**                                                                 **Page(s)**

*Augustine v. United States*,
    702 F.2d 1074 (9th Cir. 1983) ................................................................. 6

*Bailey v. United States*,
    568 U.S. 186 (2013) ................................................................................ 27

*Barnes v. Felix*,
    605 U.S. 73 (2025) ................................................................................. 32

*Bell v. Hood*,
    327 U.S. 678 (1946) .............................................................................. 3, 6

*Bell v. United States*,
    127 F.3d 1226 (10th Cir. 1997) .............................................................. 35

*Bellotte v. Edwards*,
    629 F.3d 415 (4th Cir. 2011) .................................................................. 24

*Berkovitz by Berkovitz v. United States*,
    486 U.S. 531 (1988) ................................................................. 13, 14, 36, 37

*Blais v. United States*,
    No. 18-cv-2762, 2021 WL 1840018 (D. Minn. May 7, 2021) ............. 37

*Bletz v. Gribble*,
    641 F.3d 743 (6th Cir. 2011) .................................................................. 28

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
    581 U.S. 170 (2017) ............................................................................... 35

*Brownback v. King*,
    592 U.S. 209 (2021) ......................................................................... 5, 6, 35

*Buxton v. United States*,
    No. 09-cv-5057, 2011 WL 4528337 (D.S.D Apr. 1, 2011) ................. 35

*Crawford v. United States*,
    796 F.2d 924 (7th Cir. 1986) .................................................................. 6

*Dalehite v. United States*,
    346 U.S. 15 (1953) ................................................................................. 13

*Davis v. Dawson*,
    33 F.4th 993 (8th Cir. 2022) ........................................................................ 28

*Davis v. Mississippi*,
    394 U.S. 721 (1969) .................................................................................... 28

*Decker v. State*,
    2019 Ark. 57 (2019) ............................................................................. 30, 31

*Denson v. United States*,
    574 F.3d 1318 (11th Cir. 2009) .................................................................. 14

*Dixon v. Vera Lloyd Presbyterian Home & Fam. Servs., Inc.*,
    116 F. App'x 34 (8th Cir. 2004) .................................................................... 3

*Douglas v. State*,
    2019 Ark. 57 (2019) .................................................................................... 30

*Dunaway v. New York*,
    442 U.S. 200 (1979) .................................................................................... 28

*Dykstra v. U.S. Bureau of Prisons*,
    140 F.3d 791 (8th Cir. 1998) ...................................................................... 12

*FDIC v. Dosland*,
    50 F. Supp. 3d 1070 (N.D. Iowa 2014) ...................................................... 37

*Flute v. United States*,
    No. 18-cv-4112, 2019 WL 3325353 (D.S.D. July 24, 2019) ..................... 37

*Garey v. Langley*,
    No. 2:17-CV-00117-LPR, 2021 WL 4150602 (E.D. Ark. Sept. 13, 2021) ....... 12

*Gould v. Davis*,
    165 F.3d 265 (4th Cir. 1998) ...................................................................... 24

*Griffin v. United States*,
    618 A.2d 114 (D.C. Circuit 1992) ......................................................... 19, 20

*Gualandi v. Adams*,
    385 F.3d 236 (2nd Cir. 2004) ..................................................................... 37

*Gulf Oil Corp. v. Copp Paving Co.*,
    419 U.S. 186 (1974) ...................................................................................... 5

*Harshaw v. State*,
    344 Ark. 129 (1991) .................................................................................31

*Holt v. United States*,
    46 F.3d 1000 (10th Cir. 1995) ...............................................................37

*Hudson v. Michigan*,
    547 U.S. 586 (2006) ...................................................................17, 18, 32

*Huntress v. United States*,
    810 F. App'x 74 (2d Cir. 2020) ...............................................................16

*Ignatiev v. United States*,
    238 F.3d 464 (D.C. Cir. 2001) ...............................................................37

*Illinois v. Lidster*,
    540 U.S. 419 (2004) ................................................................................28

*Johnson v. United States*,
    534 F.3d 958 (8th Cir. 2008) .................................................................37

*Kingman v. Reef Atoll Invs., L.L.C. v. United States*,
    541 F.3d 1189 (9th Cir. 2008) .................................................................7

*Kosak v. United States*,
    465 U.S. 848 (1984) .........................................................................12, 13

*Laub v. United States*,
    342 F.3 1080 (9th Cir. 2003) .................................................................36

*Limone v. United States*,
    579 F.3d 79 (1st Cir. 2009) ..............................................................14, 16

*Lincoln v. Scott*,
    887 F.3d 190 (5th Cir. 2018) .................................................................28

*Loumiet v. United States*,
    828 F.3d 935 (D.C. Cir. 2016) .........................................................13, 16

*Magee v. United States*,
    9 F.4th 675 (8th Cir. 2021) ...........................................................3, 6, 36

*Majd-Pour v. Gerogiana Comm. Hosp., Inc.*,
    724 F.2d 901 (11th Cir. 1984) ...............................................................36

*Maryland v. Bui*,
　494 U.S. 325 (1990) .............................................................................................24

*Masiello v. United States*,
　317 F.2 121 (D.C. Cir. 1963) .............................................................................21

*Matthews v. Rogers*,
　279 Ark. 328 (1983) .............................................................................................30

*Maxwell v. County of San Diego*,
　708 F.3d 1075 (9th Cir. 2013) ...........................................................................28

*McCarley v. State*,
　257 Ark. 119 (1974) .............................................................................................31

*McDonald v. United States*,
　335 U.S. 451 (1948) .............................................................................................32

*Medina v. United States*,
　259 F.3d 220 (4th Cir. 2001) ........................................................................14, 16

*Michigan v. Summers*,
　452 U.S. 692 (1981) ........................................................................................26, 27

*Moss v. United States*,
　895 F.3d 1091 (8th Cir. 2018) .............................................................................5

*Natural Resources Defense Council v. Pena*,
　147 F.3d 1012 (D.C. Cir. 1998) .........................................................................36

*Nieves Martinez v. United States*,
　997 F.3d 867 (9th Cir. 2021) ........................................................................13, 16

*Nurse v. United States*,
　226 F.3d 996 (9th Cir. 2000) .............................................................................14

*Oneida Indian Nation of N.Y. v. County of Oneida*,
　414 U.S. 661 (1974) ...............................................................................................6

*Osborn v. United States*,
　918 F.2d 724 (8th Cir. 1990) ......................................................................3, 6, 36

*O'Toole v. United States*,
　295 F.3d 1029 (9th Cir. 2002) ...........................................................................12

*Poole v. United States*,
630 A.2d 1109 (D.C. Cir. 1993)................................................................18, 19, 20

*Pooler v. United States*,
787 F.2d 868 (3d Cir. 1986)................................................................13

*Quraishi v. St. Charles County*,
986 F.3d 831 (8th Cir. 2021)................................................................26

*Raz v. Mueller*,
389 F. Supp. 2d 1057 (W.D. Ark. 2005)................................................................13

*Raz v. United States*,
343 F.3d 945 (8th Cir. 2003)................................................................4, 13, 16

*Richards v. Wisconsin*,
520 U.S. 385 (1997)................................................................17, 23

*Segura v. United States*,
468 U.S. 796 (1984)................................................................26

*Smith v. State*,
216 Ark. 1 (1949)................................................................30

*Smith v. United States*,
No. 1:20-CV-00670, 2020 WL 7405408 (M.D. Pa. Dec. 17, 2020)................................................................37

*S.R.P. ex rel. Abunabba v. United States*,
676 F.3d 329 (3d Cir. 2012)................................................................36

*Staples v. United States*,
511 U.S. 600 (1994)................................................................23

*State v. McCoy*,
692 N.W.2d 6 (Iowa 2005)................................................................28

*Steel Co. v. Citizens for Better Environment*,
523 U.S. 83 (1998)................................................................6

*Terry v. Ohio*,
392 U.S. 1 (1968)................................................................24

*Thames Shipyard & Repair Co. v. United States*,
350 F.3d 247 (1st Cir. 2003)................................................................14

*Thieme v. United States*,
No. CV 21-682 (RMB-AMD), 2023 WL 8271766 (D.N.J. Nov. 30, 2023) ................ 36

*Two Eagle v. United States*,
57 F.4th 616 (8th Cir. 2023) ................................................. 3, 13, 36

*Tygart v. Kohler*,
109 S.W.3d 147 (2003) ................................................................ 32

*U.S. v. Vesey*,
338 F.3d 913 (8th Cir. 2003) ....................................... 18, 19, 22, 24

*United States v. Banks*,
540 U.S. 31 (2003) ............................................................... 17, 18

*United States v. Gaubert*,
499 U.S. 315 (1991) .......................................................... 13, 14, 15

*United States v. Goodson*,
165 F.3d 610 (8th Cir. 1999) ...................................................... 22, 24

*United States v. Granville*,
222 F.3d 1214 (9th Cir. 2000) ......................................................... 19

*United States v. Lucht*,
18 F.3d 541 (8th Cir. 1994) ............................................................. 25

*United States v. Marts*,
986 F.2d 1216 (8th Cir. 1993) ................................................. 23, 24, 25

*United States v. Moore*,
956 F.2d 843 (8th Cir. 1992) ........................................................... 24

*United States v. Nichols*,
344 F.3d 793 (8th Cir. 2003) ..................................................... 22, 24

*United States v. Pratter*,
465 F.2d 227 (7th Cir. 1972) ........................................................... 25

*United States v. Rodriguez*,
663 F.Supp. 585 (D.C. Cir. 1987) ...................................................... 20

*United States v. Smith*,
386 F.3d 753 (6th Cir. 2004) ........................................................... 24

*United States v. Stropes*,
  387 F.3d 766 (8th Cir. 2004) ............................................................... 23, 24

*Xi v. Haugen*,
  68 F.4th 824 (3d Cir. 2023) ................................................................. 16, 36

*Walker v. City of Orem*,
  451 F.3d 1139 (10th Cir. 2006) ................................................................. 28

*Williamson v. Tucker*,
  645 F.2d 404 (5th Cir. 1981) ..................................................................... 6

*Wilson v. Arkansas*,
  514 U.S. 927 (1995) .......................................................................... 16, 19

**Statutes, Rules, Regulations, and Other Authorities**

18 U.S.C. § 3109 ..................................................................................... 14, 16

28 U.S.C. § 1346 ................................................................................... 1, 5, 29

28 U.S.C. § 2680 ..................................................................................... 12, 13

28 U.S.C. § 2671 ........................................................................................... 1

Ark. Code Ann. § 5-2-601 ............................................................................. 31

Ark. Code Ann. § 5-2-602 ............................................................................. 31

Ark. Code Ann. § 5-2-607 ........................................................... 29, 30, 31, 32

Ark. Code. Ann. § 5-2-608 ............................................................................. 31

Ark. Code Ann. § 5-2-614 .......................................................................... 33, 34

Ark. Code Ann. § 5-2-620 ............................................................................. 31

Ark. Code Ann. § 5-10-104 ............................................................................ 33

Ark. Code Ann. § 5-10-105 ............................................................................ 33

Ark. Code Ann. § 5-13-202 ............................................................................ 33

Ark. Code Ann. § 5-38-203 ............................................................................ 34

Ark. Code Ann. § 5-38-204 ................................................................................................... 34

Ark. Code Ann. § 16-62-102 ................................................................................................. 34

Ark. Code Ann. § 16-120-302 ......................................................................................... 29, 32

Fed. R. Civ. P. 12 ................................................................................................... 2, 4, 5, 36

## I.     INTRODUCTION

This action arises from the unconstitutional, reckless, excessive and unreasonable acts of Defendants. In the early morning darkness of March 19, 2024, federal agents invaded the home of Bryan and Maer Malinowski and, in less than 28 seconds, initiated a forced entry; seconds later, they shot and killed Mr. Malinowski in front of his panic-stricken wife as he tried to defend her and their home from whom he reasonably believed were unlawful intruders. The agents knew Mr. Malinowski posed no threat—he had no criminal history, no record of violence, no reason to resist law enforcement, and no reason to suspect he was under investigation. The agents knew there was no risk that evidence would be destroyed. They knew he was a respected public official—the Executive Director of the Little Rock airport. And they knew the only predicate for their search warrant was his failure to secure a $200 federal firearms license *they* believed was required. Yet, absent any reasonable basis for doing so, ATF chose the most dangerous time, place and manner to serve the warrant—a *search* warrant no less.

Once at the home's doorstep, under cover of darkness and in unreasonable defiance of the then-existing circumstances, agents failed to adequately knock and announce their presence and allow Mr. Malinowski a reasonable time to wake up, determine what was happening, and come to the door (or deny entry) before dynamically forcing entry into the home. Seconds later, they shot Bryan Malinowski in the head after he fired in defense of himself and his wife from the believed unlawful intruders.

Individually, and as surviving spouse of Bryan Malinowski and administrator of his estate, Plaintiff Maria ("Maer") Malinowski brought this suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346 *et seq.*, 2671 *et seq.,* to hold the United States ("Defendant" or "Government," together with the Individual Capacity Defendants, "Defendants") responsible for

1

the torts and constitutional violations that resulted in Bryan Malinowski's tragic death and damages to Maer Malinowski, individually. As outlined in the Complaint, ATF agents and task force officers present on March 19, 2024 violated the Malinowskis' constitutional rights and committed various state law torts when they negligently, recklessly, excessively and prematurely forced entry into their home. The Complaint sets forth facts that both establish this Court's subject matter jurisdiction and allege various constitutional violations to hold the United States accountable under the FTCA for the officers' unreasonable and unconstitutional actions.

In its Motion to Dismiss Plaintiff's Complaint, Defendant seeks to evade accountability by dismissing the FTCA claims through a purported factual attack on subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). *See* ECF 22, 23. Defendant hardly contests or defends the conduct of the officials responsible for Mr. Malinowski's death. Instead, it asserts immunity from liability for the actions by claiming (1) the misconduct was undertaken pursuant to the officials' "discretionary function," and (2) the Complaint fails to state a claim for which a private person would be liable under Arkansas law. Because the discretionary function exception does not apply when a Plaintiff alleges federal officials violated the Constitution, and because Arkansas law allows Plaintiff's tort claims, both arguments fail.

## II.    ARGUMENT

As pled in the Complaint, this Court has subject matter jurisdiction over this action because (1) officers lack discretion to violate the Constitution, and Plaintiff has properly alleged constitutional violations; and (2) Defendant cannot, at this stage, assert justification as a defense under Arkansas law to dismiss the properly pled state law tort claims.

As a threshold matter, when the jurisdiction issue is "so bound up with the merits that a full trial on the merits is needed to resolve the question," dismissal under Fed. R. Civ. P. 12(b)(1) is

2

inappropriate. *Magee v. United States*, 9 F.4th 675, 682 (8th Cir. 2021) (citing *Osborn v. United States*, 918 F.2d 724, 729–30 (8th Cir. 1990)). Such is the case here. The Government concedes this is a fact-specific inquiry, contending the Court lacks subject matter jurisdiction because "the conduct upon which these claims is based falls within the discretionary function exception to the FTCA," (ECF 23 at p. 2) and claiming there was no federal rule or policy "mandating how these agents were to execute this particular search warrant under these particular circumstances." *Id.* But unlike the basic jurisdictional issues raised in Defendant's cited cases,[1] the Government here wields Rule 12(b)(1) to seek a ruling on a merits issue (whether agents followed the Fourth Amendment's reasonableness and knock-and-announce requirements) before taking any discovery. In doing so, the Government asks this Court to forgo the safeguards of a Rule 56 factual and legal analysis and, instead, decide the ultimate factual and legal issues in this significant case at the pleading stage. Such action is unwarranted.

Additionally, as the Eighth Circuit has noted, a dismissal of the type sought by Defendant should be rare and reserved for insubstantial and frivolous claims—unlike this one. *See Dixon v. Vera Lloyd Presbyterian Home & Fam. Servs., Inc.*, 116 F. App'x 34 (8th Cir. 2004) (quoting *Bell v. Hood,* 327 U.S. 678, 682–83 (1946)) (internal citations omitted) ("Dismissal for lack of subject matter jurisdiction is appropriate only in those rare instances when the challenged claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'").

Said differently, whether the discretionary function exception applies and whether deadly force was justified, such that the United States retains its sovereign immunity, depends entirely on

---

[1] Defendant cites *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) and *Two Eagle v. United States*, 57 F.4th 616, 620 (8th Cir. 2023).  However, both cases involved "threshold" jurisdictional issues determined by uncontroverted facts (whether federal employee was acting within scope of employment (*Two Eagle*), and when a claim accrued under the FTCA (*Osborn*)), and neither case involved a determination of the ultimate issues in the case.

whether the agents' conduct was constitutional and reasonable—the very questions at the heart of Plaintiff's claims. And because jurisdiction rises and falls on the same factual and legal determinations that control the merits, dismissal at this stage under Rule 12(b)(1) is inappropriate.

Similarly, the Court should reject Defendant's attempt to dismiss the "forcible entry [] and post shooting conduct" claims (Counts VII, VIII, XII, and XIII) pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, because, as stated, the claimed discretionary function exception to government liability does not apply where a plaintiff has alleged constitutional violations. Indeed, no officer possesses the discretion to violate the Constitution. The Eighth Circuit is clear: the discretionary function exception does not apply when a plaintiff alleges that federal officials violated the Constitution or official policy, and Plaintiff alleges violations of each. *See Raz v. United States*, 343 F.3d 945, 948 (8th Cir. 2003). Indeed, the gravamen of Plaintiff's Complaint is that Defendants' actions violated Plaintiff's constitutionally guaranteed rights to be free from unreasonable and unlawful searches and seizures, including the use of excessive force. Compl. ¶¶ 275–286. Federal officers do not retain the discretion to flout the Fourth Amendment's requirements and commit various torts in the process, all without consequence.

Second, Defendant seeks to dismiss Counts V, VI, VII, IX, X, and XI on the ground that Plaintiff's Complaint "fail[s] to state a claim for which a private person would be liable under Arkansas law" because the agents' use of deadly force was "justified," and, therefore, "the United States retains its sovereign immunity." ECF 23 at pp. 2–3, 25–34. A review of Arkansas law, however, makes clear that the Complaint adequately alleges the unjustified use of deadly force by ATF agents such that a private person would be liable under Arkansas law, and there is no pleading condition or requirement preventing this Court from exercising subject matter jurisdiction. In any

4

event, a factual determination of the ultimate issues in these Counts—whether the use of deadly force was reasonable and justified—is improper at this stage for the reasons set forth fully below.

### A. LEGAL STANDARD

Defendant relies on Fed. R. Civ. P.12(b)(1), which allows a party to move to dismiss based on lack of subject matter jurisdiction, and cites *Moss v. United States* for its position that Plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. 895 F.3d 1091, 1097 (8th Cir. 2018); *see* ECF 23 at p. 6.[2] But more recently, in *Brownback v. King*, the Supreme Court explained that merits and jurisdiction are the same for purposes of the FTCA. 592 U.S. 209, 217–18 (2021) ("[I]n the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional."). Indeed, *Brownback* specifically holds—contrary to *Moss*—that "a plaintiff need not *prove* a § 1346(b)(1) jurisdictional element for a court to maintain subject matter jurisdiction over his claim." *Id.* (emphasis in original). Rather, a plaintiff need only "plausibly *allege* all six FTCA elements" of Section 1346(b)(1). *Id.* (emphasis added).[3] "That means a plaintiff must plausibly allege that 'the United States, if a private person, would be liable to the claimant' under state law both to survive a merits determination under Rule 12(b)(6) and to establish subject-matter jurisdiction." *Brownback v. King*, 592 U.S. at 217–18 (citing § 1346(b)(1)). Thus, *Brownback* clarified the pleading standard, abrogating *Moss*'s holding that a party must "prove jurisdictional facts by a preponderance of the evidence." *Id.*; *Moss*, 895 F.3d at

---

[2] *Moss* also held that "[if] the jurisdictional issue is "bound up" with the merits it remains within the district court's discretion to decide whether to evaluate the evidence under the summary judgment standard. *Id.* at 1097 (*citing Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 203 n.19 (1974)) (explaining that when there is "an identity between the jurisdictional issues and certain issues on the merits" a district court may apply the summary judgment de novo standard) (internal quotation marks omitted).

[3] A claim is actionable if it alleges that it is: "[1] against the United States, [2] for money damages,… [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* at 212 (quoting 28 U.S.C. § 1346(b)) (internal citations omitted).

1097. And Plaintiff properly alleges all six elements in the Complaint as *Brownback* requires. *See* Compl. ¶¶ 14–15, 25–26, 276, 278, 279–280, 282, 286, 321–324, 330–338, 340–355, 357–363, 365–378, 380–382, 384–387, 388–392, 394–403.

As the Supreme Court held, "[d]ismissal for lack of subject matter jurisdiction … is proper *only* when the claim is so insubstantial, implausible, … or otherwise completely devoid of merit as not to involve a federal controversy." *Brownback*, 592 U.S. at 217 (2021) (emphasis added) (quoting *Oneida Indian Nation of N.Y. v. County of Oneida,* 414 U.S. 661, 666 (1974); *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 89 (1998)) (cleaned up). Here, the Government does not—and cannot—argue that. In any event, granting a motion to dismiss on a jurisdictional issue that turns on certain facts requires, at a minimum, a hearing and discovery into the jurisdictional dispute, which is why the Eighth Circuit requires that "[i]f the defendant thinks the court lacks jurisdiction, the proper course is to request an evidentiary hearing on the issue." *Osborn*, 918 F.2d at 730 (citing *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986)).

Defendant diverts the Court from deferring to Plaintiff's detailed Complaint by urging the Court to consider its objections to jurisdiction as a "factual attack," and therefore consider matters outside the pleadings. ECF 23. But in doing so, it ignores the standard: dismissal is inappropriate where the jurisdiction issue is "so bound up with the merits that a full trial on the merits is needed to resolve the question." *Magee*, 9 F.4th at 682 (citing *Osborn*, 918 F.2d at 729–30). "Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court … is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case." *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981) (citing *Bell*, 327 U.S. 678); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) ("[W]here the jurisdictional issue and substantive issues are

6

so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial."); *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1196–97 (9th Cir. 2008) (holding that, where the questions are "so intermeshed," dismissal is improper).

### B.  PERTINENT ALLEGATIONS IN THE COMPLAINT

On March 6, 2024, ATF Special Agent Troy Dillard obtained two federal search warrants related to Bryan Malinowski for the suspected crime of failing to secure a federal firearms license before selling firearms at local gun shows. The warrants authorized federal agents to search the Malinowski home and his vehicle for firearms, ammunition, electronics, sales records, and correspondence. Compl. ¶¶ 6, 51. There was no arrest warrant. Nor did they set forth any facts that would lead any person to believe Mr. Malinowski would evade law enforcement, fail to cooperate, be dangerous, or pose a threat or risk of destroying evidence (to the extent one even could in such a case). *Id.* at ¶ 52. Nevertheless, the agents decided his suspected violation was serious enough to warrant a predawn dynamic raid at his home while they knew he and his wife would be sleeping. *Id.* at ¶ 61.

As lead investigator, Special Agent Troy Dillard drafted and submitted the ATF Operations Plan for the execution of the search warrant at the Malinowski home. *Id.* at ¶ 64. Nothing in the Operations Plan or the ATF's months-long investigation indicated Bryan posed a danger to himself or others, that he would not comply with agents' requests, or would in any way inhibit the agents' ability to execute the search warrant. *Id.* at ¶¶ 65, 67. Despite this, agents chose to prepare for and execute a dynamic entry. *Id.* at ¶ 86. According to Agent Hicks, when ATF makes a dynamic entry

into a home, they are usually "dealing with violent armed career criminals and drug dealers ... [that's] the bulk of the types of cases that we work." *Id.* at ¶ 74.

The agents originally prepared to execute the search warrant on March 12, 2024. *Id.* at ¶ 87. However, surveillance of the Malinowski home revealed that Mr. Malinowski left home early that morning to fly to Washington D.C. for work. *Id.* at ¶¶ 90–91. Nothing prevented the agents from executing the search warrant on March 12, 2024, other than their chosen desire to have Mr. Malinowski physically present for the raid. *Id.* at ¶¶ 92–94.

Before dawn on the morning of March 19, 2024, ten carloads of federal and state law enforcement officers arrived at the quiet cul-de-sac in Little Rock, Arkansas and assembled in the dark to execute the search warrant on the Malinowski home. *Id.* at ¶¶ 3, 6. At 6:02:42 a.m., seven ATF agents and task force officers stacked onto the front steps of 4 Durance Court, a large gray stucco home, while the Malinowskis slept inside. *Id.* at ¶¶ 4–5. As agents approached the front door of the home, the first agent in the stack, Agent Bass, placed a piece of painter's tape over the video doorbell to disable the camera and conceal the presence and identity of the armed team on the front porch (seemingly at odds with any genuine intent to be recognized). *Id.* at ¶ 141. When all agents were in place and the video doorbell taped, at 6:02:58 a.m., Agent Boles gave the command to initiate the knock and announce procedure. *Id.* at ¶¶ 142, 145. Immediately prior to the knock and announce, Little Rock Officer Lakey activated his vehicle's lights and sirens and then shut off the siren after one and a half (1.5) seconds. *Id.* at ¶ 145.

After the command to "initiate" from Commander Boles and the brief siren bump by Officer Lakey, Agent Sprinkles began shouting and knocking on the glass of the Malinowski's outer storm doors. *Id.* at ¶ 151. During that time, Agent Boles could see through the angled plantation shutters, but did not see any lights turn on and did not observe any movement or hear

8

any noises or voices coming from inside the home. *Id.* at ¶ 157. In spite of no articulable threat or danger to agents or evidence, Agent Boles told the Arkansas State Police that "I've got a clock in my head. It's like we're out here, we're exposed. Um, so I told them, go ahead and breach the door." *Id.* at ¶ 158. In total, the knocking on the Malinowskis' outer glass doors lasted approximately nineteen (19) seconds, from 6:02:58 a.m. to 6:03:17 a.m. *Id.* at ¶ 154. After these nineteen (19) seconds, Agent Boles ordered the team to breach the home. *Id.* at ¶ 160.

In less than twenty-eight (28) seconds from the time that Officer Lakey initiated the siren bump (for 1.5 seconds), Agent Boles ordered his agents to break the glass doors, breach the wooden doors, and enter the Malinowski home by force. *Id.* at ¶ 161. In the process of breaking both sets of doors, the entry team became disorganized. *Id.* at ¶ 166.[4] Based on the Operations Plan, Agent Sprinkles was supposed to be the second agent to enter the home, which would have placed him behind Agent Bass who had the identifying "POLICE" shield. Instead, he entered first amid the disorganization and hesitation pursuant to Agent Boles' order. *Id.* at ¶ 108. As Agent Sprinkles recalled to state police investigators, "I wasn't supposed to be the first entry," so Agent Sprinkles stood still waiting for Agent Bass to enter the home first. *Id.* at ¶ 167. Agent Boles, the entry team leader, failed to heed the signs that his team had fallen into disarray. *Id.* at ¶ 171. According to Boles, "There was a brief hesitation [when the door opened], which I was surprised because with our package, once the door comes open, you go in. It was a split second… And I said, 'go.'" *Id.* at ¶ 172.

Upon the command of "Go" from Agent Boles, Agent Sprinkles entered the home with his semi-automatic rifle drawn. *Id.* at ¶ 173. Agent Cowart expected to be approximately the fourth agent to enter the home, but unexpectedly found himself as the second agent to enter. *Id.* at ¶ 110.

---

[4] Upon information and belief, the agents responsible for executing the dynamic entry were working squad agents and TFOs, not trained SWAT operators or officers tactically trained as a group for such specialized and dynamic tactics.

9

As the agents breached the home, they were silent: no one announced their identity or purpose once the doors burst open. *Id.* at ¶ 174. "I didn't say anything," Cowart recalled to state police investigators, and all he recalled Agent Sprinkles (the first agent in) saying once inside was "oh, shit." *Id.* at ¶ 176. Less than 20 seconds later, at 6:03:46 a.m., gunshots rang out, and Bryan Malinowski crumpled to the ground, shot in the head by an ATF agent following an exchange of gunfire. *Id.* at ¶ 8.

On the morning of March 19, 2024, the entry team members were all similarly dressed in dark blue long-sleeved shirts, and any law enforcement insignia or identification on the front and back of their shirts was mostly or completely covered by their bullet proof vests. *Id.* at ¶ 124. And as the entry team fell into disarray, the identifying "POLICE" shield never made it into the home. *Id.* at ¶ 129.

Waking up and confused at the sound of banging at his door, Mr. Malinowski scrambled out of bed and crept into the dark hallway with his gun to protect himself and his wife from whom he reasonably believed were intruders. He did not know that he was under investigation (having never received any correspondence or communication of any kind from authorities), much less that the people who broke down his front doors were law enforcement because, in addition to the pre-dawn darkness, they had failed to adequately knock and announce their presence and give him a reasonable time to wake up, recognize what was happening, and come to the door. *Id.* at ¶ 9. Believing they were intruders, Bryan fired his gun in a downward direction, hitting one of the agents in the boot sole. *Id.* at ¶ 188. Agent Cowart, who entered second in the stack directly behind Agent Sprinkles, returned fire, pointing his rifle at Bryan's head and pulling the trigger several times. *Id.* at ¶ 189.

10

Mr. Malinowski's wife, Maer, did not heed her husband's direction to stay in their bedroom, and instead followed him into the dark hallway where she saw him shot in the head. *Id.* at ¶ 10. After realizing the intruders had fatally wounded her husband, Maer saw several dark figures at the entryway pointing their rifles at her and loudly instructing her to show them her hands. It was only then that she realized the men were law enforcement. *Id.* at ¶¶ 11, 196–197. The agents detained Ms. Malinowski and escorted her to the back of an LRPD cruiser, where she was held for the next several hours wearing only a spaghetti strap tank top and a pair of boxers (no shoes), with no updates on her husband's condition. *Id.* at ¶¶ 198–199, 201. They denied her requests to ride to the hospital in the ambulance with her husband; they denied her requests for clothes; they denied her requests for medicine; they denied her requests to go check on her dogs; they denied her requests to use the bathroom at her neighbor's home. *Id.* at ¶¶ 204, 207–210. For more than three hours after her husband was shot, Maer Malinowski was held in custody by LRPD officers at the direction of ATF agents. *Id.* at ¶ 221.

For several hours, the Malinowski home was secured, but not searched. *Id.* at ¶ 223. The Arkansas State Police obtained a search warrant for the home as part of their officer-involved shooting investigation. ATF agents did not begin to search the Malinowski home pursuant to the original search warrant until after it was turned over to them that afternoon at 1:53 p.m. *Id.* at ¶¶ 225–226.

Bryan Malinowski succumbed to his injuries two days later at the hospital, on March 21, 2024. He was 53 years old. *Id.* at ¶ 12.

### C. THE FTCA'S DISCRETIONARY FUNCTION EXCEPTION DOES NOT WARRANT DISMISSAL

The Government argues it retains its sovereign immunity for the tort claims arising from the forcible entry and post-shooting conduct brought in Count VII (negligence), Count VIII

(intentional infliction of emotional distress), Count XII (criminal mischief), and Count XIII (false imprisonment), as the conduct upon which these claims is based falls within the discretionary function exception to the FTCA. ECF 23 at p. 2. This argument fails because (1) Plaintiff has alleged Defendants' conduct violated the Constitution, and (2) the jurisdictional facts cited by Defendant are intertwined with the merits so as to preclude dismissal at this stage.

### 1.  The Discretionary Function Exception Is Inapplicable

This Court has subject matter jurisdiction over this action because the discretionary function exception does not apply where, as here, Plaintiff alleges the government's activities violated the Constitution (namely the Fourth Amendment). The Government concedes that conduct that violates the Constitution cannot be discretionary. ECF 23 at p. 14.

"'To the extent an alleged act falls within the discretionary function exception, a court lacks subject matter jurisdiction" to hear the resulting negligence claim." *Garey v. Langley*, No. 2:17-CV-00117-LPR, 2021 WL 4150602, at *6 (E.D. Ark. 2021) (Rudofsky, J.) (quoting *Dykstra v. U.S. Bureau of Prisons*, 140 F.3d 791, 795 (8th Cir. 1998)). But as this Court has also noted, "[t]he stakes are high when the question is whether a citizen can get his or her day in court to recover money damages from his or her government because a government official assaults or batters him or her." *Id*. at *19. So, "in order to effectuate Congress's intent to compensate individuals harmed by government negligence, the FTCA, as a remedial statute, should be construed liberally, and its exceptions should be read narrowly." *O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002). The discretionary function exception must not be read in a way that would nullify the exception through judicial interpretation, but an unduly generous interpretation of the exception runs the risk of defeating the central purpose of the FTCA. *See Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984). "We think that the proper objective of a

12

court attempting to construe one of the subsections of 28 U.S.C. § 2680 is to identify 'those circumstances which are within the words and reason of the exception' – no less and no more." *Id.* (quoting *Dalehite v. United States*, 346 U.S. 15, 31 (1953).

The discretionary function exception applies only when both prongs of a two-part test are satisfied. *Two Eagle v. United States*, 57 F.4th 616, 623 (8th Cir. 2023). Those parts include: (1) the acts alleged to be negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation; and (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis. *United States v. Gaubert*, 499 U.S. 315 (1991); *Berkovitz by Berkovitz v. United States*, 486 U.S. 531 (1988). But as a threshold matter—and the principal basis on which this Brief rests—the discretionary function exception does not apply when a plaintiff alleges that federal officials violated the Constitution. *See Raz*, 343 F.3d at 948 (holding that "the FBI's alleged surveillance activities f[e]ll outside the FTCA's discretionary-function exception" because plaintiff "alleged they were conducted in violation of his First and Fourth Amendment rights") (citing *Pooler v. United States*, 787 F.2d 868, 871 (3d Cir. 1986)) (noting that discretionary function exception would not apply if complaint alleged that federal agents violated plaintiff's constitutional rights in course of investigation, because federal agents do not possess discretion to commit such violations); *see also, e.g.*, *Raz v. Mueller*, 389 F. Supp. 2d 1057, 1076 (W.D. Ark. 2005) ("Federal agents do not have discretion to commit constitutional violations."); *Nieves Martinez v. United States*, 997 F.3d 867, 877 (9th Cir. 2021) ("Even if the agents' actions involved elements of discretion, agents do not have discretion to violate the Constitution."); *Loumiet v. United States*, 828 F.3d 935, 943 (D.C. Cir. 2016) (holding that "the FTCA's discretionary-function exception does not provide a blanket immunity against tortious conduct that a plaintiff plausibly alleges also flouts a

constitutional prescription," discussing cases from the First, Second, Third, Fourth, Fifth, Eighth, and Ninth circuits which held the same); *Limone v. United States*, 579 F.3d 79, 101 (1st Cir. 2009) (similar); *Medina v. United States*, 259 F.3d 220, 225 (4th Cir. 2001) (similar); *Nurse v. United States*, 226 F.3d 996, 1002 n.3 (9th Cir. 2000) (reversing the dismissal of FTCA claims pursuant to the discretionary function exception where the plaintiff alleged a constitutional violation).

Simply put, state law torts arising out of actions that are alleged to violate the Constitution do not fall within the exception because conduct that violates the Constitution is never discretionary. *See Denson v. United States*, 574 F.3d 1318, 1336–37 n.55 (11th Cir. 2009) (explaining why this conclusion is implicit in Supreme Court precedent); *Thames Shipyard & Repair Co. v. United States*, 350 F.3d 247, 254 (1st Cir. 2003) ("courts have read the Supreme Court's discretionary function cases as denying protection to actions that are unauthorized because they are unconstitutional."). And Plaintiff's Complaint is replete with allegations of unconstitutional action by Defendants. *See, e.g.,* Compl. ¶¶ 7–8, 13, 85–86, 134–135, 141–144, 151–156, 157–161, 163, 170–172, 173–176, 201–204, 207–211, 215, 221–223, 251, 276, 281, 285, 288–289, 291, 295–299, 304–306, 313–318, 342–343, 346–350, 352, 376, 385. The Government's Motion should be denied on this basis alone.

Accordingly, it is not necessary for this Court to engage in the two-prong discretionary function analysis cited by Defendant and established in *Berkovitz* and *Gaubert*; however, even applying that test, the Government has failed to establish that its actions are shielded by the exception. The exception is inapplicable under the first prong (discretionary functions or duties) as ATF policy requires agents' conduct conform with the requirements and limitations imposed by the Fourth Amendment's protection against unreasonable searches and seizures as codified in

14

18 U.S.C. § 3109. *See* Defendants' Joint Exhibit 11, ATF Order 3220.1B, Searches and Examinations.

The exception is equally inapplicable under the second prong. As Justice Scalia explained in *Gaubert,* the discretionary function exception does not extend to every governmental act involving some element of choice. 499 U.S. at 335 (Scalia, J., concurring). It applies only when the choice, under the particular circumstances, is one that should be informed by social, economic, or political policy "and is made by an officer whose official responsibilities include assessment of those considerations." *Id.* In other words, the test looks not only at the decision itself but also the officer who made it, recognizing "the planning vs. operational dichotomy." *Id.* As Justice Scalia explained, an operational-level employee is ordinarily not responsible for policy decisions, even though "policy considerations may be highly relevant to his actions." *Id.* For example, while a dock foreman's decision regarding how to stack fertilizer—even if informed by safety or cost considerations—would not be protected by the exception, because "it was not his responsibility to ponder such things." *Id.* By contrast, "the Secretary of Agriculture's decision to the same effect *is* protected, because weighing those considerations is his task." *Id.* So too here. The ATF agents executing this search warrant were operating at the tactical, operational level. The decisions they made on the morning of March 19, 2024 about how and when to enter the Malinowski home did not involve weighing social, economic, or political considerations, nor were such policy judgments part of their responsibilities. The agents' role was limited to carrying out the Operations Plan within the bounds of the Fourth Amendment and the rules governing warrant execution.

### a. Forcible Entry - Count VII (Negligence), Count VIII (IIED), Count XII (Criminal Mischief)

The Government argues that the discretionary function exception shields their forced entry into the Malinowski home from FTCA liability. Not so. Counts VII, VIII, and XII based on the ATF agents' decisions and tortious conduct are not barred by the discretionary function exception because, as repeatedly noted, they involved the alleged violation of a constitutional right under the Fourth Amendment. *See Raz,* 343 F.3d 945. Plaintiff alleges—and the Complaint details at length—that Defendants used excessive force to execute the search warrant by forcing entry into the Malinowski residence in the predawn hours, without any legal right or justification, without any reasonable basis to believe that Mr. Malinowski was a threat to the agents, and with a wholly unjustified degree of urgency and militaristic tactics given the circumstances. Such conduct was unreasonable and unconstitutional. Defendants had no reasonable belief, based upon the totality of facts and circumstances, to believe that the Malinowskis had refused them entry, nor was any exigency present to justify failing to wait a reasonable time (under the then-existing circumstances) after knocking and announcing their presence. Their conduct, which Plaintiff has alleged violated the Fourth Amendment, is not shielded by the discretionary function exception because unconstitutional actions are never discretionary. *See Raz,* 343 F.3d at 948; *Limone,* 579 F.3d at 101*; Medina,* 259 F.3d at 225; *Nieves Martinez,* 997 F.3d at 878–79*; Loumiet,* 828 F.3d at 943–44; *Huntress v. United States,* 810 F. App'x 74, 76–77 (2d Cir. 2020); *Xi v. Haugen,* 68 F.4th 824, 838 (3d Cir. 2023).

As outlined in Plaintiff's Complaint, government actors violate the Fourth Amendment prohibition against unreasonable searches and seizures when they fail to adequately knock and announce their presence and wait a reasonable time before entry. Compl. ¶¶ 233, 241. In *Wilson v. Arkansas,* the Supreme Court held that the "common-law 'knock and announce' principle forms

16

a part of the reasonableness inquiry under the Fourth Amendment." 514 U.S. 927, 929 (1995). The requirement to knock and announce is also codified in 18 U.S.C. § 3109, stating that officers must give "notice of [their] authority and purpose," and must be refused admittance before forcing entry into a home. 18 U.S.C. § 3109. The knock and announce requirement protects "human life and limb, because an unannounced entry may provoke violence in supposed self-defense by the surprised resident." *Hudson v. Michigan,* 547 U.S. 586, 594 (2006). Absent a reasonable belief that waiting would be futile, dangerous, or would allow for the destruction of evidence, law enforcement officers are required to wait outside of the home until they are admitted or refused. *Richards v. Wisconsin,* 520 U.S. 385, 394–95 (1997). A "reasonable belief" cannot be speculative but must be based on specific and articulable facts. *Id.*

In its Motion to Dismiss, Defendant argues that ATF agents' forcible entry into the Malinowski home was reasonable based on (1) constructive refusal and (2) danger to the safety of officers that would allow entry before refusal, while citing only cases for potential destruction of evidence. ECF 23 at pp. 15–16. The Government relies on no precise justification, nor does it clearly define the separate exceptions that, it argues, would allow entry before actual refusal. Instead, Defendant generally conflates and combines the analysis in its Motion, reciting a variety of statements to portray an aura of exigency. ECF 23 at pp. 17–20. However, the Supreme Court has refused to combine separate justifications to loosen the standard, noting that "the crucial fact[s] in examining [the agents'] actions is…. the particular exigency claimed." *United States v. Banks*, 540 U.S. 31, 40 (2003). Considering unrelated circumstances "ignores the very risk that justified prompt entry." *Id.* at 39.

*Constructive Denial*

Defendant asserts that ATF agents were permitted to forcibly enter the Malinowski home

17

because they were "constructively denied admittance." ECF 23 at p. 15. In so claiming, Defendant does not attack any factual allegations in the Complaint regarding constructive denial, but only asserts countervailing factual conclusions, arguing that "whether officers have waited long enough after knocking to infer that they have been constructively denied admittance … depends upon the circumstances confronting the officer serving the warrant." ECF 23 at p. 15. This is a fact-dependent argument better suited for summary judgment than a Rule 12(b)(1) motion to dismiss, but even so, Defendant fails to prove the ATF agents were constructively denied entry. Based on the circumstances confronting the ATF agents on the pre-dawn morning of March 19, 2024, it was unreasonable for them to infer refusal after waiting less than 28 seconds, which included the 1.5 seconds siren bump and 19 seconds of knocking on the outer glass doors, before agents began breaking down the doors of the house. This, in addition to evidence that agents neither heard nor saw anything that would have led them to believe the occupants were awake.[5] *See Poole v. United States*, 630 A.2d 1109, 1117 (D.C. Cir. 1993).

The law presumes that a resident will submit to the lawful authority of officers and provide entry to them. *Hudson,* 547 U.S. at 594. "Absent exigency, the police must knock and receive an actual refusal or wait out the time necessary to infer one." *Banks,* 540 U.S. at 43. But where circumstances are not exigent, such as the emergency presented by the suspected drug dealer in *Banks* who might be disposing of drugs and cited by Defendant*,* and where police do not arrive "during the day, when anyone inside would probably have been up and around," officers must wait a sufficient time to allow the delay in responding to fairly suggest the occupants' refusal to let them in. 540 U.S. at 40. "An officer's delay before entering ordinarily should be long enough to ensure that the resident has had time to hear the police knock and to answer the door." *U.S. v.*

---

[5] Importantly, and ironically, agents placed tape over the Ring camera, thereby preventing any occupant from observing their identity; a common tactic in dynamic and high-risk search and arrest warrant executions.

18

*Vesey*, 338 F.3d 913, 915–16 (8th Cir. 2003), citing *Wilson,* 514 U.S. at 931 (holding a ten-second delay was reasonable where, unlike here, the warrant recipients were at risk of disposing illegal drugs and officers were serving a warrant at a "small apartment ... in the afternoon, when it was likely that any occupants were awake"). Unless "[s]pecial circumstances supporting a reasonable belief on the part of the police that the occupants' non-response … is deliberate, … '[a] significant time lapse' is required to justify a conclusion that admittance was refused." *Griffin v. United States*, 618 A.2d 114, 124–25 (D.C. Circuit 1992); *United States v. Granville*, 222 F.3d 1214, 1218 (9th Cir. 2000).

Defendant fails to cite a single case to support that 28 seconds was sufficient to infer constructive refusal during a pre-dawn execution when there was no sign that anyone in the home was awake or posed a threat.[6] In *Griffin v. United States*, the D.C. Circuit held that a thirty-second delay between a police announcement and a forced entry into a home at 1:40 a.m. was too short for the police to reasonably conclude that they had been constructively refused admittance, noting the lack of authority cited "in which a delay of only thirty seconds has been held sufficient in the absence of some suspicious activity following the arrival of the police, or some other circumstance which the court viewed as equivalent thereto." 618 A.2d at 122. "At that time of the night, [] many, if not most, people are asleep in bed, semi-dressed, and unlikely to react quickly or rationally to a sudden knock at the door." *Poole,* 630 A.2d at 1117. Unless there is "evidence that the police heard or saw anything that would have led them to believe that the occupants were awake," such as hearing the television or any movement, "under these

---

[6] Defendant claims that 37 seconds elapsed between the initiation of the knock and announce procedure and actual entry into the residence. ECF 23 at p. 17. Their calculation apparently includes the officers' announcement at the door through the time of actual presence in the home. But less than 28 seconds elapsed from the beginning of any announcement action until agents started breaking down the doors, beginning with the 1.5 second siren bump and only 19 seconds of actual knocking before forcing entry.

19

circumstances, … the police could not have reasonably believed that they had been constructively refused admittance." *Id.* The *Griffin* court distinguished authorities cited by the Government "upon the common ground that, in each, there were additional suspicious circumstances justifying a reasonable belief on the part of the officers that immediate action was required." 618 A.2d at 123 (internal citations omitted).

> Indeed, the D.C. Circuit has considered circumstances similar to those here, noting that,
>
> If a person is awakened by banging on the door, an immediate and appropriate response may not be feasible. For at least a brief period, the erstwhile sleeper is likely to be too bewildered to react. He or she must then focus on the possibility that those demanding entry may have no legitimate business on the premises. This is especially true where [] the bedroom is a considerable distance from the door, so that a suddenly awakened individual may not hear the officer's oral announcements identifying the apparent disturbers of a peaceful night as police officers armed with a search warrant. Indeed, the occupant's first instinct—a reasonable one—may be to call 911. Moreover, most citizens are not clad at 1:40 a.m. in manner suitable for opening the door to strangers. If someone is not dressed, sufficiently or at all, dressing takes time. Finally, for most people awakened or startled by loud banging at twenty to two in the morning, the circumstances are not likely to be conducive to rational analysis or to swift or provident decision-making.

*Griffin*, 618 A.2d at 121. Even at 6:30 a.m., agents can expect that occupants will be in bed sleeping. *United States v. Rodriguez*, 663 F.Supp. 585, 588 (D.C. Cir. 1987) ("Those few seconds that the officers waited before resorting to the battering ram, afforded little if any time for any occupant to hear and respond to a knock, let alone to make it to the door. The warrant in this instance was served at 6:30 o'clock in the morning, a time when the occupants were in bed, still sleeping.").

Here, ATF agents were nearly certain that the Malinowskis were asleep at the time they executed the search warrant moments after 6:00 a.m. and well before sunup on March 19, 2024. Indeed, Special Agent Dillard documented in the Operations Plan, and the agents and task force officers were aware that, based on data obtained from a GPS tracking device that ATF placed on

20

his vehicle, Mr. Malinowski was not expected to leave for work until approximately 9:00 to 10:00 a.m. Compl. ¶ 72. Additionally, the Malinowski home was a large, single-story home, approximately 2,780 square feet with four bedrooms, three full bathrooms, and two half bathrooms. According to Special Agent Adam Bass, it was "a big house." *Id.* In executing the search warrant, as agents stood on the front porch, entry team leader Agent Boles did not see any lights turn on and did not observe any movement or hear any noises or voices coming from inside the home. *Id.* at ¶ 157. The only lights that were on in the home were described by Agent Boles as the kind of lights you turn on "when you're going to bed." Defendants' Joint Exhibit 4, ATF Special Agent Timothy Boles Audio Statement, 9:08–9:40.[7]

Defendant's assertion that agents were constructively denied admittance is further contradicted by the entry team leader in his statement to the Arkansas State Police two days after Mr. Malinowski was shot. In his interview, Agent Boles stated, "I've got a clock in my head.  It's like we're out here, we're exposed. Um, so I told them go ahead and breach the door." Compl. ¶ 158. Agent Boles did not keep track of the time on a watch or other device to measure how many seconds or minutes elapsed between the end of Agent Sprinkles' knocking and his decision to breach the home. *Id*. at ¶ 159. Agent Boles never stated in the interview how much time had passed based on the "clock in [his] head." If the officers wanted to track whether they had been constructively denied admittance, "it would not seem too much to expect that [the] officers… take some note of the time… with an ordinary watch." *Masiello v. United States*, 317 F.2 121, n.5 (D.C. Cir., 1963)(concurring).

---

[7] According to the facts presented by the Government in its Motion, the Government notes that Agent Boles saw a light on in the house. ECF 23 at p. 19.  This statement was an excerpt from a broader context; the light did not indicate that anyone was awake.  Agent Boles noted in his statement that "it wasn't a bright light.  It was, you know, like lights you would turn on, you know, when you were going to bed." Defs. Joint Ex. 4, 9:08–9:40.

Given the early morning dawn hour, lack of otherwise suspicious circumstances, the size of the home, and common sense, the ATF agents could not reasonably infer they were denied admittance in less than 28 seconds under these circumstances.

### Exigent Circumstances

Without supporting facts, Defendant also apparently contends that exigent circumstances justified the forced entry, arguing that federal agent discretion has been recognized "as reasonable when 'the need to force entry may result from danger to the safety of the entering officers.'" ECF 23 at p. 15 (quoting *Vesey*, 338 F.3d at 915). In evaluating the inference that agents were denied admittance after knocking and announcing their authority, Defendant argues that "an approximately twenty second time frame has been often held as a reasonable time frame under the circumstances of different cases." ECF 23 at pp. 15–16. However, the cases cited by Defendant in support only permitted such a short delay *because* the circumstances involved reasonable concerns for destruction of evidence (typically drugs) or officer safety, in addition to factors like time of day and size of home—concerns and circumstances that did not exist here on the morning of March 19, 2024.

For example, Defendant cites a string of inapposite cases with distinguishable facts: *Vesey*, 338 F.3d at 916 (ten seconds held to be reasonable "particularly because they arrived in the afternoon, when it was likely that any occupants were awake, … size of apartment, the time of day, … and the suspected presence of drugs"); *United States v. Nichols*, 344 F.3d 793, 798 (8th Cir. 2003) (police did not violate knock and announce rule by forcing entry after 20 second delay, particularly since circumstances "involved search for and seizure of cocaine, evidence that could be easily disposed of or destroyed."); *United States v. Goodson*, 165 F.3d 610, 614 (8th Cir. 1999) (waiting 20 seconds after knocking and announcing presence and purpose was reasonable,

22

considering the size of the house, the potential that the residents could flush crack cocaine down a toilet, and fact that a resident had a record for assault with a deadly weapon.). Here, there was no indication or belief at any time that evidence would be, was being, or even could be, destroyed. There were no suspected drugs. The house was not small. It was not daylight. The person of interest had no criminal record and was the Executive Director of the Little Rock Airport. The Government, in its purported "factual attack," offers *no facts* to support a finding of exigency consistent with the cases it cites. It offers no evidence and makes no argument that the agents feared destruction of evidence, nor does it cite any case supporting the reasonableness of the seconds delay here—where no such concerns existed.

Defendant also cites *United States v. Stropes*, 387 F.3d 766 (8th Cir. 2004) for its position that concern for officer safety is warranted when the objects of a search warrant are firearms. ECF 23 at p. 15. There, the court found a twenty-second delay to be reasonable because officers reasonably suspected they faced a drug dealer who had multiple firearms and traded drugs for firearms, based on corroborated statements from an informant, so that officer safety was a reasonable concern. *Stropes*, 387 F.3d at 772–773. Defendant argues that because Bryan Malinowski was being investigated for firearms violations (i.e. failure to secure a $200 federal firearms license before selling firearms at local gun shows), such a circumstance "rais[es] the possibility … that he would be armed when agents entered the residence." ECF 23 at p. 17.

Such an argument in this case is absurd. Roughly 50 percent of American homes contain at least one firearm. *Staples v. United States*, 511 U.S. 600 (1994). The presence of firearms, alone, cannot serve as the basis for federal agents to force entry into a person's home. *United States v. Marts*, 986 F.2d 1216 (8th Cir. 1993). Officers must have a reasonable belief based on specific and articulable facts that the person poses a danger. *Richards*, 520 U.S. at 394–95

23

(1997) (citing *Maryland v. Bui*, 494 U.S. 325 (1990); also citing *Terry v. Ohio*, 392 U.S. 1 (1968)); *see also Gould v. Davis*, 165 F.3d 265, 271–72 (4th Cir. 1998) ("guns do not fire themselves, and the justifiable fear for an officer's safety must include a belief … that someone in the home might be willing to use it."). Otherwise, a per se rule based upon the subjective fears and beliefs of officers would emasculate the Fourth Amendment, reducing it to nothing more than a knock-and-enter rule. *Marts*, 986 F.2d at 1218 (citing *United States v. Moore*, 956 F.2d 843, 850 (8th Cir., 1992)). "'If the officers are correct, then the knock and announcement requirement would never apply in the search of anyone's home who legally owned a firearm.'" *Bellotte v. Edwards*, 629 F.3d 415, 423 (4th Cir. 2011) (quoting *Gould,* 165 F.3d at 272); *accord United States v. Smith,* 386 F.3d 753, 760 (6th Cir.2004); *Marts,* 986 F.2d at 1218 (8th Cir. 1993). "'This clearly was not and is not the law, and no reasonable officer could have believed it to be so.'" *Id.*

Unlike the cases cited by Defendant, all of which involved the execution of search warrants at the homes of drug dealers or individuals with criminal records, *Vesey*, 338 F.3d 913; *Nichols*, 344 F.3d 793; *Goodson*, 165 F.3d 610; *Stropes*, 387 F.3d 766, Defendant fails to articulate *any* specific fact or belief by an agent that Mr. Malinowski posed *any* danger at all. Instead, the Government highlights general, broadly applicable statements made by the agents regarding the scene, noting:

- "[W]e were exposed as soon as we pulled into the cove." ECF 23 at p. 18.
- There were "windows all across the front of the house." *Id.*
- "There is a doorbell Ring camera off to the right… Lot of exposure for us." *Id.*
- "It's like we're out here, we're exposed."  ECF 23 at pp. 18–19.
- "It [was] not a good spot to be in front of the door." ECF 23 at p. 19.

All of these statements are completely neutralized by the facts specific to this matter. As expected, nothing in the Operations Plan indicated Bryan Malinowski posed a danger to himself or others, or that he was not expected to comply with (known) law enforcement. Compl. ¶ 65. In fact, during their months-long investigation leading up to Mr. Malinowski's death, ATF investigative officers well knew he did not pose a threat to their safety or the safety of others; that he had no criminal history or history of violence; that he had never threatened law enforcement officers; that he was a high-level and trusted city employee; and that his wife and dogs lived with him and would be present during the pre-dawn entry. *Id.* at ¶ 67. In fact, according to Special Agent Shannon Hicks, Mr. Malinowski was "the last person I would have imagined that we would have been in an armed confrontation with." *Id.* at ¶ 69. And according to Special Agent Tyler Cowart, "[w]e thought this would be an easy search warrant and we'd be out of there pretty quick. And [Malinowski] would cooperate and everything, and it was supposed to be easy." *Id.* at ¶ 70.

As noted by the Eighth Circuit, "we appreciate the fact that [the agents] assumed this was a high-risk situation… However, a decision to force entry cannot rest on an assumption.  It requires consideration of the particular facts and circumstances surrounding the execution of the warrant." *United States v. Lucht*, 18 F.3d 541, 551 (8th Cir. 1994).  In *Lucht*, the agents did not hear or see anything to indicate that they were in danger. *Id.* The agents knew that there were likely weapons in the home, "but had no information indicating that [the homeowner (Kress)] was considered dangerous or violent or might be inclined to use the weapon against them." *Id.* (citing *Marts*, 986 F.2d at 1217–18); s*ee also United States v. Pratter*, 465 F.2d 227, 230–31 (7th Cir. 1972) ("Prompt action and surprise may be necessary to forestall escape, the destruction of evidence, or even violence; yet prompt action and surprise may also precipitate

25

such consequences.") (emphasis added).

### b. Post Shooting Conduct – Count XIII (False Imprisonment)

Defendant argues this claim also falls within the discretionary function exception and should be dismissed because the officers had discretion to detain Mrs. Malinowski. ECF 23 at p. 21–25. But as discussed at length above, ATF agents do not have discretion to violate Ms. Malinowski's constitutional right to be free from unreasonable seizure under the Fourth Amendment.

To establish a violation of the Fourth Amendment, "the claimant must demonstrate a seizure occurred and the seizure was unreasonable." *Quraishi v. St. Charles County*, 986 F.3d 831, 839 (8th Cir. 2021). As an initial matter, Defendants did not have a warrant for the arrest of Ms. Malinowski (or Mr. Malinowski, for that matter) and had no reasonable articulable suspicion or probable cause that she had committed a crime—she had nothing to do with the violation being investigated. Compl. ¶¶ 396–398. The Government argues that "the existence of a search warrant provides an objective justification for detention." ECF 23 at p. 24 (citing *Michigan v. Summers*, 452 U.S. 692, 703 (1981)). But *Summers* makes clear that a search warrant gives officers only "*limited* authority to detain the occupants of the premises *while* a proper search is conducted." *Summers*, 452 U.S. at 705 (emphasis added). Here, however, Defendants did not conduct any search during the more than three hours they detained Ms. Malinowski against her will. Compl. ¶ 399. Indeed, even "a seizure reasonable at its inception because [it is] based upon probable cause may become unreasonable as a result of its duration ...." *Segura v. United States*, 468 U.S. 796, 812 (1984).

Ms. Malinowski was held in custody by LRPD officers at the direction of ATF agents for more than three hours after her husband was shot, from 6:07 a.m. until 9:15 a.m., when ATF agents

turned Ms. Malinowski over to the Arkansas State Police to be interviewed. Compl. ¶¶ 202, 221–222. For several hours after Bryan was shot, the Malinowski home was secured, but not searched. *Id.* at ¶ 223. The Arkansas State Police obtained a search warrant for the home as part of their officer-involved shooting investigation, but the search warrant affidavit was not submitted for judicial approval until at least 8:58 a.m. *See* Plaintiff's Exhibit A (Affidavit for Search Warrant, Arkansas State Police). ATF agents did not begin to search the Malinowski home pursuant to the original warrant until the scene was turned over to them by the Arkansas State Police at 1:53 p.m. *Id.* at ¶¶ 225–226.

The Government also ignores that, despite her repeated pleas, ATF agents denied Ms. Malinowski's requests to go to the hospital with her husband, requests to use the bathroom at her neighbor's home, as well as requests for clothing, medicine, and to check on her dogs. Compl. ¶¶ 204, 206–211. Such a prolonged and unreasonable detention far exceeds what *Summers* contemplated as "an incremental intrusion on personal liberty." *Summers*, 452 U.S. at 703. The intrusion was compounded by the fact that Ms. Malinowski was not detained in her home, but exposed to the public scrutiny of neighbors when she was detained in her cul-de-sac and, later, in a fire station restroom—all while her husband lay dying in a nearby hospital. Compl. ¶ 400; *see Bailey v. United States*, 568 U.S. 186 (2013) (distinguishing *Summers* because a home detention adds "only minimally to the public stigma associated with the search itself" and avoids the "inconvenience [and] indignity" of being compelled into public custody) (quoting *Summers*, 452 U.S. at 703).

The Government argues that any detention of Ms. Malinowski occurred because of the investigation into the shooting and subsequent search. ECF 23 at p. 24. The Eighth Circuit is clear, "[t]here is… a robust consensus that seizing witnesses to a crime in similar circumstances is a

27

clearly established constitutional violation." *Davis v. Dawson*, 33 F.4th 993 (8th Cir. 2022) (family members of victim detained against their will for over three hours after witnessing stabbing at their home; officers denied family's requests to go to the hospital with victim and had no reasonable suspicion the family was involved in the crime). Other circuits agree. *See, e.g.*, *Lincoln v. Scott*, 887 F.3d 190, 198 n.5 (5th Cir. 2018) (reiterating that the right not to be seized and transported for interrogation is "clearly established" by *Davis v. Mississippi,* 394 U.S. 721 (1969) and *Dunaway v. New York,* 442 U.S. 200 (1979)); *Maxwell v. County of San Diego*, 708 F.3d 1075, 1083 (9th Cir. 2013) (holding "officers were on notice that they could not detain, separate, and interrogate the [plaintiffs] for hours" just because they witnessed a shooting); *Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011) (holding "[l]aw enforcement officers were fairly on notice regarding the constitutional violations inherent in subjecting an innocent bystander to a detention that was excessive both in duration and in the manner it was carried out"); *State v. McCoy*, 692 N.W.2d 6, 19–20 (Iowa 2005) (holding defendant's counsel ineffective for not raising a "*Dunaway* violation" for illegal seizure when "police simply took the defendant to the station for investigative purposes, knowing full well they had no legal reason to detain him."). *Cf. Walker v. City of Orem*, 451 F.3d 1139, 1147 (10th Cir. 2006) (seizing and interrogating witnesses to a police shooting at the scene violated the Fourth Amendment, but prior to *Illinois v. Lidster,* 540 U.S. 419 (2004) when the shooting occurred, it was not clearly established).

Here, as in *Davis v. Dawson*, "[b]oth the duration and the nature of this seizure exceed[ed] the bounds of the Constitution." 33 F.4th at 998. The detention of Ms. Malinowski was therefore unreasonable, and the Government cannot cloak such a constitutional violation in the discretionary function exception.

### D.  The United States Is Not Shielded from Immunity by State Statute

The Government contends it retains its sovereign immunity for the Arkansas state tort

28

claims arising from the use of deadly force brought in Count V (wrongful death), Count VI (assault and battery), Count VII (negligence), Count IX (crime victim manslaughter/negligent homicide), Count X (crime victim battery), and Count XI (crime victim aggravated assault) because the use of deadly force was justified, and therefore Plaintiff failed to show that a private person would be liable in these circumstances under Arkansas law. ECF 23 at pp. 2–3.[8] This argument fails because (1) the shooting of Bryan Malinowski was not justified under Arkansas law pursuant to Arkansas' civil use of deadly force statute, (2) justification is not a valid defense for claims involving recklessness or negligence, and (3) the jurisdictional facts are intertwined with the merits so as to preclude a dismissal at this stage.

### 1. Defendants Were the Initial Aggressors, Acted Unlawfully and Created the Threat, and Therefore Cannot Assert a Justification Defense

Under the FTCA, the United States waives its sovereign immunity to the extent a private person would be liable under the law of the place where the conduct alleged occurred. 28 U.S.C. § 1346(b). Under Arkansas law, a person is immune from suit for the use of deadly physical force against another person who is an initial aggressor if the use of deadly physical force was in accordance with Ark. Code Ann. § 5-2-607. Ark. Code Ann. § 16-120-302. Section 5-2-607 provides that a "person is justified in using deadly physical force upon another person if the person reasonably believes that the other person is ... [c]ommitting or about to commit a felony involving force or violence [or] ... [u]sing or about to use unlawful deadly physical force, or [i]mminently endangering the person's life." Ark. Code Ann. § 5-2-607(a)(1)–(3). A person is not required to retreat before using deadly physical force as long as all six enumerated conditions are satisfied, including that the person is lawfully present, reasonably believes deadly force is imminently

---

[8] Defendant also argues that Count VIII (intentional infliction of emotional distress) and Count XII (criminal mischief) should be dismissed based on justification, in addition to their discretionary function arguments. ECF 23 at pp. 30-33.

threatened, and "is not the initial aggressor and has not provoked the person against whom deadly physical force is used." Ark. Code Ann. § 5-2-607(b)(1)–(6).

Defendant argues that Special Agent Cowart's use of deadly force was justified because "Malinowski was the initial aggressor" and Cowart reasonably believed Mr. Malinowski "was using unlawful deadly force against federal agents by shooting at them upon their lawful entry." ECF 23 at pp. 27–28; Ark. Code Ann. § 5-2-607(a)–(b). This is unavailing. The Complaint plausibly alleges that, needlessly and in violation of policy, ATF agents executed an unconstitutional and reckless pre-dawn forced entry designed to wake up sleeping and unsuspecting occupants, and otherwise created circumstances and set in motion a series of events any reasonable officer would expect to bring about a dangerous result. Compl. ¶ 262. Accordingly, justification is unavailable for at least three independent reasons: (a) Mr. Malinowski was not the initial aggressor; (b) the agents were not lawfully present because they acted in contravention to the Constitution; and (c) Cowart's claimed belief in imminent danger was unreasonable because it was manufactured by the agents' own unlawful tactics.

Defendant contends that Mr. Malinowski was the initial aggressor because he fired first. ECF 23 at pp. 27–28. That contention misstates both the Complaint and Arkansas law. Under Arkansas law, the initial aggressor is the person who committed the first act of aggression. *Decker v. State*, 234 Ark. 518, 524 (1962). Critically, a defendant cannot take advantage of a provocation he invited. *Douglas v. State*, 2019 Ark. 57, 13 (2019); *Smith v. State*, 216 Ark. 1, 12 (1949); *Matthews v. Rogers*, 279 Ark. 328, 338 (1983).

Despite Defendant's assertion to the contrary, ECF 23 at p. 27, the Complaint specifically alleges that Defendants were the initial aggressors in carrying out the forcible, unreasonable, and unlawful entry into the Malinowski home. Compl. ¶¶ 335–36, 351, 370–77, 381, 385–86, 391.

30

The unlawful, reckless, and excessive manner and circumstances in which the agents forced entry into the Malinowski home was intended to produce, and did produce, the threat of bodily impact, restraint, or confinement upon the Malinowskis. Such conduct is "physical force" as defined in Arkansas' justification statutes in Ark. Code Ann. § 5-2-601(6), and is considered "deadly force" as defined in Ark. Code Ann. § 5-2-602(2). The defensive force used by Bryan Malinowski, who reasonably believed the agents were unlawful intruders, was due entirely to the agents' unreasonable and unlawful entry into his home.

Accordingly, it was Mr. Malinowski who was entitled to use deadly force under Arkansas' "stand your ground" law, Ark. Code Ann. §§ 5-2-607, 5-2-608, and 5-2-620, because he reasonably believed the agents (whose identity at the time was unknown) were about to use unlawful deadly physical force against him. Section 5-2-608 specifically authorizes deadly physical force when necessary to prevent a burglary by a trespasser. Ark. Code Ann. § 5-2-608. And Section 5-2-620(a) reaffirms the "fundamental right" of Arkansans to defend themselves in their homes against persons unlawfully entering or attempting to enter or intrude. Ark. Code Ann.§ 5-2-620(a). That statute further establishes a presumption that such defensive force "was exercised in a lawful and necessary manner" unless overcome by clear and convincing evidence to the contrary. Ark. Code Ann.§ 5-2-620(b).

Arkansas law further requires courts to evaluate the totality of the circumstances leading up to the fatal shot, not just the precise moment it was fired. *Decker*, 234 Ark. at 521–22 (uncommunicated threat admissible to explain conduct and motive); *Harshaw v. State*, 344 Ark. 129, 132–33 (1991) (quoting *McCarley v. State,* 257 Ark. 119, 124, (1974) ("'if one acts *too hastily and without due care* in assaulting another, even though he believes he is about to be assaulted, he is not justified in taking a human life'")). The Supreme Court likewise recently rejected the

31

"moment-of-threat" doctrine in excessive force cases, recognizing that force must be judged by assessing the totality of the circumstances, including facts and events leading up to the use of deadly force. *Barnes v. Felix*, 605 U.S. 73 (2025).

Similarly, Ark. Code Ann. § 5-2-607 requires an officer's belief of imminent danger be reasonable. Reasonableness is based on the totality of the circumstances, including facts and events leading up to the use of deadly force. *See Barnes*, 605 U.S. 73. As noted, the agents had no reasonable basis to believe that Mr. Malinowski or his wife posed any threat to the agents before entering the home and creating the imminence they now seek to exploit.

Further, a defendant must be free from fault or carelessness to rely on justification. *Tygart v. Kohler*, 109 S.W.3d 147, 151 (2003). Courts have long warned that unannounced forced entries "may provoke violence in supposed self-defense by the surprised resident." *Hudson*, 547 U.S. at 594. Indeed, the Supreme Court grimly warned in 1948, "a method of law enforcement so reckless and fraught with danger and discredit to the law enforcement agencies themselves" could result in "an officer seeing a gun being drawn on him [and] might shoot first." *McDonald v. United States*, 335 U.S. 451, 461 (1948). Defendants cannot manufacture dangerous circumstances through unconstitutional acts and then invoke those very circumstances as a justification for deadly force.

Because Plaintiff has alleged, and can prove, that ATF agents were the initial aggressors, were unlawfully present, and created the very circumstances giving rise to their claim of self-defense, Defendant cannot invoke Ark. Code Ann. § 16-120-302 as a shield against liability at this stage.

### 2. Justification Is Not a Valid Defense for Claims Alleging Recklessness or Negligence

Further, under Arkansas law, the Government cannot claim justification for Counts V, IX, X, or XII. No justification defense is available—even to a law enforcement officer—when a person

"believes that the use of physical force is necessary," but the person is "reckless or negligent either in forming that belief or in employing an excessive degree of physical force." Ark. Code Ann. § 5-2-614(a). Additionally, a person—including a law enforcement officer—who recklessly or negligently creates a substantial risk of injury to a third party cannot avail themselves of a justification defense. Ark. Code Ann. § 5-2-614(b).

In Count IX, Plaintiffs bring a claim for manslaughter and negligent homicide under the Arkansas Victim of Felonies Act. In Arkansas, a person commits the felony offense of manslaughter, a class B felony, if they recklessly cause the death of another person. Ark. Code Ann. § 5-10-104(a)(3). Within manslaughter lies the included offense of negligent homicide. In Arkansas, a person commits the felony offense of negligent homicide, a class D felony, if he or she negligently causes the death of another person by means of a deadly weapon. Ark. Code Ann. § 5-10-105(b)(2). The Complaint lays out how ATF agents recklessly or negligently formed the belief that deadly physical force was necessary—that they needed to make an armed forced entry into a peaceful home before being denied entry. And the agents' armed, forced entry into the Malinowski home exhibited an excessive degree of physical force under the circumstances known to the agents at the time of entry. Compl. ¶ 376. Pursuant to Ark. Code Ann. § 5-2-614, the Government cannot claim justification on this Count.

In Count X, Plaintiffs bring a claim of battery under the Arkansas Victim of Felonies Act. In Arkansas, a person commits the offense of battery in the second degree, a class D felony, if the person recklessly causes serious physical injury to another person by means of a deadly weapon. Ark. Code Ann. § 5-13-202(a)(3)(A). The Complaint alleges how Defendants recklessly caused serious physical injury to Mr. Malinowski by means of a deadly weapon and under circumstances manifesting extreme indifference to the value of human life. Pursuant to Ark. Code Ann. § 5-2-

33

614, the Government cannot claim justification on this Count. For the same reason, justification is not a valid defense to Plaintiff's Wrongful Death claim (Count V) insofar as it is predicated on Count X. Under Ark. Code Ann. § 16-62-102, a person is liable for the death of another when the death is caused by a wrongful act that would have otherwise supported a cause of action had the death not ensued. A "wrongful act" can be predicated on common law battery or assault, or on an act that amounts to a felony. Ark. Code Ann. § 16-62-102(a)(1). Plaintiffs' wrongful death claim is predicated both on the common law torts identified in Count VI (Assault and Battery) and on the statutory claim identified in Count X (Battery in the Second Degree). Because the Government is barred from raising justification as a defense to Count X, it is likewise barred from asserting justification to defeat a wrongful death claim predicated on Count X.

In Count XII, Plaintiff brings a claim of criminal mischief under the Arkansas Victim of Felonies Act. In Arkansas, a person commits the felony offense of criminal mischief in the first degree if that person purposely and without legal justification destroys or causes damage to any property of another person; and such an offense becomes a felony when the damage is valued at more than one thousand dollars ($1,000). Ark. Code Ann.§ 5-38-203(b)(2)-(4). In Arkansas, a person commits the (included) felony offense of criminal mischief in the second degree if that person recklessly destroys or damages any property of another person; and such an offense is a felony if the damage is valued at more than five thousand dollars ($5,000). Ark. Code Ann. § 5-38-204(b)(2). The Complaint alleges that Defendants purposely and without justification destroyed and caused damage to the home and property of Bryan and Maer Malinowski in an amount that exceeded $5,000. Pursuant to Ark. Code Ann. § 5-2-614, the Government cannot claim justification on this Count.

34

### III.   PLAINTIFF PROPERLY SOUGHT COMPENSATORY DAMAGES

For its last point, the Government argues that Plaintiff may not seek punitive damages under the FTCA—a fact that Plaintiff acknowledged in the Complaint by only seeking punitive damages against the individual defendants in the *Bivens* counts. *See* Compl. ¶¶ 277, 301, 303, Prayer for Relief ("That Plaintiff be awarded punitive damages against the *individual Defendants* in an amount to be determined to deter each Defendant and others from similar misconduct in the future") (emphasis added). Plaintiff seeks compensatory damages, which are authorized.

### IV.   ANY RULING ON THE GOVERNMENT'S MOTION SHORT OF DENIAL REQUIRES DISCOVERY INTO THE JURISDICTIONAL ISSUES RAISED

The Court should deny the Government's motion to dismiss for the reasons outlined herein. In the alternative, the Court should stay any decision on the applicability of the discretionary function exception or justification and related defenses under Arkansas law until at least the summary judgment stage and after discovery has been completed, given that the applicability of the exception and defenses are heavily intertwined with the merits of Plaintiff's claims. *See Buxton v. United States*, No. 09-cv-5057, 2011 WL 4528337, at *5 (D.S.D. Apr. 1, 2011) (collecting cases applying summary-judgment standard "where government's argument that the court lacked subject matter jurisdiction under the FTCA was intertwined with the merits of the case"), *report and recommendation adopted*, 2011 WL 4528329 (D.S.D. Sept. 28, 2011); *see also Brownback*, 592 U.S. at 217 (observing that the "merits and jurisdiction will sometimes come intertwined" in FTCA cases) (quoting *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 178 (2017)). Indeed, courts have stated in a number of cases involving the discretionary function exception to the FTCA that "the determination of whether the FTCA excepts the Government's actions from its waiver of sovereign immunity involves both jurisdictional and merits issues." *Bell v. United States,* 127 F.3d 1226, 1228 (10th Cir.1997). Unlike a scope of

35

employment or statute of limitations inquiry, the jurisdictional issue here—whether the discretionary function exception applies—is not clearly severable from the merits of Plaintiff's claims. *See Osborn*, 918 F.2d 724; *Two Eagle*, 57 F. 4th 616. Dismissal is inappropriate where the jurisdiction issue is "so bound up with the merits that a full trial on the merits is needed to resolve the question." *Magee*, 9 F.4th at 682 (citing *Osborn*, 918 F.2d at 729–30).

As the Government would have it, Plaintiff is in the position of establishing jurisdiction without the benefit of robust discovery. Since Plaintiff bears the burden of proving the Court's jurisdiction, fairness requires that they be allowed an opportunity to discover facts supporting their allegations. *Majd-Pour v. Georgiana Comm. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984); *Laub v. United States*, 342 F.3d 1080, 1093 (9th Cir. 2003); *Natural Resources Defense Council v. Pena*, 147 F.3d 1012, 1024 (D.C. Cir. 1998); *Thieme v. United States*, No. CV 21-682 (RMB-AMD), 2023 WL 8271766, at *8 (D.N.J. Nov. 30, 2023) ("It is Plaintiffs' burden to establish subject matter jurisdiction, but because the [Constitutional] allegations overlap with issues of FTCA jurisdiction, the Court must be careful to not prematurely grant Defendants' Rule 12(b)(1) motion and will not do so here given questions regarding Plaintiffs' constitutional defense to the discretionary function exception."); *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 344 (3d Cir. 2012) ("By requiring less of a factual showing than would be required to succeed at trial, [we] ensure that [district courts] do not prematurely grant Rule 12(b)(1) motions to dismiss claims in which jurisdiction is intertwined with the merits and could be established, along with the merits, given the benefit of discovery.").

As the Supreme Court has noted, a motion to dismiss a lawsuit under the FTCA may not be warranted because a plaintiff "may yet show, on the basis of materials obtained in discovery" the necessary elements. *Berkovitz*, 486 U.S. at 547–48; *see also Xi*, 68 F.4th at 844 (Bibas, J.,

concurring) ("Sometimes, plaintiffs need discovery.") (citing *Berkovitz*, 486 U.S. at 547–48)); *Smith v. United States*, No. 1:20-CV-00670, 2020 WL 7405408, at *6 (M.D. Pa. Dec. 17, 2020) (denying motion to dismiss FTCA claim because the complaint set forth plausible allegations, the "details" of which could "be gleaned through the discovery process").

Alternatively, if the Court is inclined to believe the Government presents a legitimate question about whether subject matter jurisdiction exists—which Plaintiff contests—and the Court is not inclined to allow the case to proceed through its normal process, the Court should exercise its "'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" *Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). Plaintiff should be afforded an opportunity to take jurisdictional discovery and make an evidentiary presentation before the Court makes any factual findings bearing on the applicability of the discretionary function exception. *See FDIC v. Dosland*, 50 F. Supp. 3d 1070, 1083–84 (N.D. Iowa 2014) (permitting jurisdictional discovery on the nature of "mandatory internal policies, procedures, or regulations"); *see also, e.g.*, *Ignatiev v. United States*, 238 F.3d 464, 467 (D.C. Cir. 2001) (similar); *Blais v. United States*, No. 18-cv-2762, 2021 WL 1840018, at *6 (D. Minn. May 7, 2021) (noting, in an FTCA case, that the parties had taken extensive jurisdictional discovery), *aff'd*, 37 F.4th 502 (8th Cir. 2022); *Flute v. United States*, No. 18-cv-4112, 2019 WL 3325353, at *8 (D.S.D. July 24, 2019) (allowing "limited jurisdictional discovery" to determine whether negligent actor was federal employee). Discovery can be permitted on a motion to dismiss for lack of subject matter jurisdiction and should be where the relevant discovery rests with the adversary, here the Government. *See Gualandi v. Adams,* 385 F.3d 236, 244 (2nd Cir. 2004).[9]

---

[9] Discovery here would show none of the officers present, from the ATF to the task force officers, engaged body cameras as mandated when executing search warrants. *See* Compl. ¶¶ 120–122. Discovery will also reveal how agents

37

## V.    CONCLUSION

The United States' Motion to Dismiss should be denied. A factual determination of the ultimate issues in the lawsuit is improper at this stage. Because the Government may not invoke the discretionary function exception in response to an FTCA claim where the torts alleged also constitute a constitutional violation, and because Arkansas law allows Plaintiff's tort claims, the Court should find it has subject matter jurisdiction or, at a minimum, stay its jurisdictional ruling and allow the lawsuit to proceed through discovery and in the ordinary course. In the alternative, the Court should stay any ruling on the Government's motion to allow Plaintiff to conduct jurisdictional discovery and hold an evidentiary hearing.

Dated:  September 19, 2025                    Respectfully submitted,

GRAVES GARRETT GREIM LLC

By:  _/s/ Nathan F. Garrett_____
    Nathan F. Garrett, *pro hac vice*
    Lucinda H. Luetkemeyer*, pro hac vice*
    Helen Hallie Mast Beal, *pro hac pending*
    1100 Main Street, Suite 2700
    Kansas City, Missouri 64105
    Telephone: (816) 256-3181
    ngarrett@gravesgarrett.com
    lluetkemeyer@gravesgarrett.com
    hbeal@gravesgarrett.com

LAW OFFICES OF BUD CUMMINS, P.L.C.

    H.E. "Bud" Cummins,  AR. No. 89010
    1818 N. Taylor Street, No. 301
    Little Rock, Arkansas 72207
    Telephone: (501) 831-6125

---

deviated from their own operations plan and entered the home without the "POLICE" ballistic shield as planned—and that they silently forced entry into the home seconds after they stopped knocking, forgoing a call-out or other less lethal tactic, all without waiting a reasonable time. Discovery will also show, as Congress already learned, that agents had a myriad of reasonable, safe and case-appropriate alternative ways to serve the search warrant, and that Mr. Malinowski's tragic death was unquestionably and entirely preventable—at no cost to the case. Discovery will prove it was a direct result of the unreasonable and unconstitutional conduct of the ATF agents named as defendants.

bud@budcumminslaw.com

JAMES & CARTER, P.L.C.

Paul James, AR. No. 83091
Matt Stauffer, AR. No. 2012284
500 Broadway Street, Suite 400
Little Rock, Arkansas 72201
Telephone: (501) 372-1414
pjj@jamescarterlaw.com
matt@staufferfirm.com

APPELLATE SOLUTIONS, PLLC d/b/a
RIORDAN LAW FIRM

Deborah Truby Riordan, AR. No. 93231
1501 N. University Avenue, Suite 310
Little Rock, Arkansas 72207
Telephone: (501) 235-8235
deb@arklawoffice.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 19th day of September 2025, the foregoing was served on all counsel of record via the Court's e-filing system.

*/s/ Nathan F. Garrett*
*Counsel for Plaintiff*

39