IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**MARIA DEL SOCORRO MALINOWSKI,**
*individually and as a personal representative*
*of the Estate of Bryan K. Malinowski,*
*deceased, and on behalf of the wrongful*
*death beneficiaries of Bryan K. Malinowski*                          **PLAINTIFF**

**v.**                          **Case No. 4:25-cv-00486-LPR**

**UNITED STATES OF AMERICA;**
**BUREAU OF ALCOHOL, TOBACCO,**
**FIREARMS AND EXPLOSIVES;**
**TIMOTHY BOLES; TROY DILLARD;**
**CLAYTON MERRILL; TYLER**
**COWART; MATTHEW SPRINKLES;**
**JAMES BASS; MICHAEL GIBBONS;**
**CHRIS GRIGGS; SHANNON HICKS; and**
**AMY NESS,** *individually*                          **DEFENDANTS**

## ORDER

This is the second of two Orders addressing requests to dismiss the claims in this case. The first Order addressed claims brought against the United States under the Federal Tort Claims Act.[1] Today's Order addresses claims brought against individual ATF agents pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*.[2]

The Court's first Order—which allowed nearly all of the FTCA claims to move forward—acknowledged the great difficulty that any plaintiff faces when attempting to plead a viable *Bivens* claim.[3] As further explained in that Order, there are two truisms that dominate this area of the law:

---

[1] *See* June 17, 2026 Order (Doc. 50). That Order also briefly addressed FTCA claims brought against the ATF, but only to explain that FTCA claims are not viable against the ATF. *See id.* at 3 n.7.

[2] 403 U.S. 388 (1971). *See* Compl. (Doc. 1) ¶¶ 287–319. More specifically, the Individual Defendants include 8 ATF Special Agents and 2 state/local law enforcement officers—Michael Gibbons and Chris Griggs—who were working with the ATF as Task Force Officers (TFOs). *See id.* ¶¶ 33–34.

[3] The Court adopts, for purposes of today's Order, the factual and legal analysis set out in the introductory section of its previous Order. *See* June 17, 2026 Order (Doc. 50) at 1–6.

(1) it is extremely understandable why plaintiffs keep trying to state viable *Bivens* claims; and (2) it is very rare for a plaintiff to succeed in that endeavor.[4]  The Supreme Court has narrowly cabined the circumstances in which a plaintiff can state a *Bivens* claim.[5]  Actually, "narrowly cabined" is a significant understatement.  Except in extraordinarily specific circumstances, the Supreme Court has essentially eliminated *Bivens* actions.[6]  Speaking very roughly, *Bivens* claims just don't survive these days unless the circumstances underlying the claims are nearly identical to the circumstances of the rare *Bivens* actions that have already been blessed by the Supreme Court.

Before proceeding to the analysis required by the Supreme Court's recent *Bivens* precedent, a judicial disclaimer of sorts is appropriate.  The Court is well aware of how frustrating the modern Supreme Court precedent must be for plaintiffs that have experienced a significant violation of their constitutional rights by federal officials.  The precedent holds out what almost always ends up being the false hope of a successful *Bivens* action.  The Court is similarly well aware of how frustrating the modern Supreme Court precedent must be for plaintiffs' counsel.  The precedent requires them to navigate between the Scylla and Charybdis of either trying to convince their clients that a *Bivens* claim is (in most circumstances) an empty promise or expending significant time, resources, and effort on a claim that has an incredibly small chance of viability.

---

[4] *See id.* at 3–5.

[5] *See Egbert v. Boule*, 596 U.S. 482, 491 (2022) ("[R]ecognizing a cause of action under *Bivens* is a disfavored judicial activity.  When asked to imply a *Bivens* action, our watchword is caution. . . . [E]ven a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy." (internal citations and quotations omitted) (second alteration in original)).

[6] The Supreme Court has only recognized a *Bivens* action in three carefully delineated contexts.  *See Carlson v. Green*, 446 U.S. 14, 16–19 (1980); *Davis v. Passman*, 442 U.S. 228, 248–49 (1979); *Bivens*, 403 U.S. at 397.  And it has not applied *Bivens* to a new context in over 40 years.  *See Egbert*, 596 U.S. at 486 ("In *Bivens* . . . this Court authorized a damages action against federal officials for alleged violations of the Fourth Amendment.  Over the past 42 years, however, we have declined 11 times to imply a similar cause of action for other alleged constitutional violations."); *Goldey v. Fields*, 606 U.S. 942, 945 (2025) (per curiam) ("For the past 45 years, this Court has consistently declined to extend *Bivens* to new contexts.").

And the Court is well aware of how frustrating the modern Supreme Court precedent must be for defendants and defense counsel. They have to expend time, resources, and energy responding to claims that the Supreme Court has all but relegated to the dustbin of legal history.

To these participants in the litigation process, all the Court can offer is that they are not alone in their frustration.[7] But the Court has a solemn obligation to faithfully apply the current

---

[7] The Court wishes to echo and amplify a point made by Justice Gorsuch in *Egbert v. Boule*. *See* 596 U.S. at 502–04 (Gorsuch, J., concurring). The majority in *Egbert* rejected an asserted *Bivens* action based on fairly fine distinctions between the circumstances in *Egbert* and the circumstances in *Bivens*. *See id.* at 495–502. Justice Gorsuch, concurring in the judgment, aptly explained the difficulties associated with the majority's continuously-narrowing-without-ever-overruling approach to *Bivens*:

> Of course, the Court's real messages run deeper than its case-specific analysis. If the costs and benefits do not justify a new *Bivens* action on facts so analogous to *Bivens* itself, it's hard to see how they ever could. And if the only question is whether a court is "better equipped" than Congress to weigh the value of a new cause of action, surely the right answer will always be no. Doubtless, these are the lessons the Court seeks to convey. I would only take the next step and acknowledge explicitly what the Court leaves barely implicit. Sometimes, it seems, "this Court leaves a door ajar and holds out the possibility that someone, someday might walk through it" even as it devises a rule that ensures "no one . . . ever will." In fairness to future litigants and our lower court colleagues, we should not hold out that kind of false hope, and in the process invite still more "protracted litigation destined to yield nothing." Instead, we should exercise "the truer modesty of ceding an ill-gotten gain," and forthrightly return the power to create new causes of action to the people's representatives in Congress.

*Id.* at 504 (Gorsuch, J., concurring) (first quoting *Edwards v. Vannoy*, 593 U.S. 255, 282–83 (2021) (Gorsuch, J., concurring); then quoting *Nestle USA, Inc. v. Doe*, 593 U.S. 628, 645 (2021) (Gorsuch, J., concurring); and then quoting *Nestle*, 593 U.S. at 646 (Gorsuch, J., concurring)). *Bivens* was wrongly decided. *See Egbert*, 596 U.S. at 502 ("[W]e have indicated that if we were called to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution."). Moreover, it was egregiously wrong, altering the federal Constitution's balance of power between the branches by arrogating to an unelected judiciary power that belongs to the elected (and accountable) organs of government. The Supreme Court has essentially recognized as much. *See id.* at 492 ("Our cases instruct that, absent utmost deference to Congress' preeminent authority in this area, the courts 'arrogat[e] legislative power.'" (quoting *Hernandez v. Mesa*, 589 U.S. 93, 100 (2020))). And that Court has spent the last two decades slicing *Bivens* thinner and thinner in an attempt to avoid either applying it or overruling it. *Cf. id.* at 503–04 (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself. To be sure, as the Court emphasizes, the episode here took place near an international border and the officer's search focused on violations of the immigration laws. But why does that matter? The Court suggests that Fourth Amendment violations matter less in this context because of likely national-security risks. So once more, we tote up for ourselves the costs and benefits of a private right of action in this or that setting and reach a legislative judgment. To atone for *Bivens*, it seems we continue repeating its most basic mistake." (internal quotations and citations omitted)). The result has been predictable. Lay plaintiffs—including an emotionally distraught widow who watched the ATF shoot her husband in the head—believe there's still a chance to succeed under *Bivens*. Lawyers who represent plaintiffs, in turn, feel obliged to press these claims, even knowing the unlikelihood of success. Countless hours of briefing, argument, and opinion-writing follow because (1) these cases usually involve serious injury or death (incentivizing exhaustive treatment by all parties and demanding extended judicial attention), and (2) the governing test and relevant factual distinctions are, at this point, so convoluted as to push the boundaries of logical comprehension and clean expression. And, at the end of this kabuki theatre of sorts, there is usually a plaintiff who finds the distinctions drawn between her case and *Bivens* so artificial and so unpersuasive that she (understandably)

Supreme Court precedent regardless of whether the Court agrees with that precedent as a matter of first principles, logic, and common sense. The Court has labored long and hard to carry out that solemn obligation in the context of this case. For the reasons explained below, the Individual Defendants' Motion to Dismiss is GRANTED.

---

questions the impartiality of the Court, the fairness of its decision, or both. Little does that plaintiff know that the legal deck was insurmountably stacked against her from the start.

The long and short of it is that—given governing caselaw—everyone's time and energy would be much better spent on other aspects of these types of cases. The Supreme Court should put everyone out of their misery by burying *Bivens* for good. Then, with the fig leaf of a potential *Bivens* remedy removed from the equation, Congress can do its job and decide whether to establish a civil cause of action against individual federal actors who violate the Constitution. If Congress wants to provide Americans with a cause of action to enforce constitutional provisions against individual federal actors, it will do so clearly and set the terms of that cause of action. If Congress doesn't want to provide such a cause of action, it won't create one. And then the people can hold their congressman, the majority party in Congress, and/or the filibustering minority accountable for that choice. That is how representative democracy is supposed to work. *See id.* at 491 ("[W]e have come 'to appreciate more fully the tension between' judicially created causes of action and 'the Constitution's separation of legislative and judicial power . . . .' At bottom, creating a cause of action is a legislative endeavor." (quoting *Hernandez*, 589 U.S. at 100)); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 75 (2001) (Scalia, J., concurring) ("*Bivens* is a relic of the heady days in which this Court assumed common-law powers to create causes of action—decreeing them to be 'implied' by the mere existence of a statutory or constitutional prohibition. . . . [W]e have abandoned that power to invent 'implications' in the statutory field . . . . There is even greater reason to abandon it in the constitutional field, since an 'implication' imagined in the Constitution can presumably not even be repudiated by Congress." (internal citations omitted)); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 317 (2012) ("[A] private right of action cannot be found to be 'implied' unless the implication both is clear and is based on the text of the statute—not exclusively on its purpose.").

If this all sounds a little quaint and naïve, then the 250th anniversary of our nation is as good a time as any to re-read the Declaration of Independence, the Constitution of the United States, the Records of the Federal Convention of 1787, the Federalist Papers, the Anti-Federalist Papers, and the State Ratification Debates. *See generally* CONSOURCE, consource.org (last visited July 3, 2026). As James Madison explained in Federalist No. 78, although "the general liberty of the people can never be endangered" by a judiciary that "remains truly distinct from both the legislature and the executive[,]" that liberty has "everything to fear" from a judiciary where "the power of judging" is mixed with the power of legislating or executing the laws. *See* THE FEDERALIST NO. 78, at 466 (James Madison) (Clinton Rossiter ed., 1961). The protections of individual liberty are contingent upon continuously resisting the siren song of unelected judges supplementing (or supplanting) the work assigned to Congress. *See* SCALIA & GARNER, *supra* note 7, at 347–48 ("Since the mid-20th century, legal theorists have been prodding judges to make policy from the bench. . . . The problem is that although properly informed human minds may agree on what a text means, human hearts often disagree on what is right. That is why we vote (directly or through our representatives) on what the law ought to be, but leave it to experts of interpretation called judges to decide what an enacted law means. It is doubtless true, as a descriptive matter, that judges will often strain to avoid what they consider an unjust result. But we decline to elevate that human tendency to an approved principle of interpretation."). Legislating is hard for a reason. And that reason is the Constitution's bias in favor of individual liberty. *Cf. Considering the Role of Judges Under the Constitution of the United States: Hearing Before the S. Comm. on the Judiciary*, 112th Cong., S. Hrg. 112-137 (2011) (statement of Hon. Antonin Scalia, Assoc. Just., Sup. Ct. of the U.S.) (explaining that the real "reason that America is such a free country" is that the separation of powers set up by our Founding Fathers prevents an "excess of legislation" and thereby protects the liberties of political minorities against the fleeting or capricious will of political majorities). The long-term structural risks of sanctioning judicial end-runs around the legislative process are never worth the short-term sugar highs of making law (even seemingly righteous law) by way of judicial decree.

## I.    BACKGROUND

The *Bivens* claims at issue in today's Order are: failure to knock-and-announce (Count I),[8] unlawful entry (Count II),[9] use of excessive force (Count III),[10] and illegal detention (Count IV).[11] The individual agents against whom these *Bivens* claims are stated—Timothy Boles, Troy Dillard, Clayton Merrill, Tyler Cowart, Matthew Sprinkles, James Bass, Michael Gibbons, Chris Griggs, Shannon Hicks, and Amy Ness—have moved to dismiss all such claims.[12]   According to the agents, a *Bivens* claim is not available in the circumstances of the instant case.[13]   Ms. Malinowski disagrees, arguing that the alleged unconstitutional conduct in the instant case falls within the traditional heartland of a *Bivens* claim.[14]   After closely considering the parties' arguments, the facts alleged in the Complaint, and the relevant Supreme Court and Eighth Circuit precedents, the Court agrees with the agents that a *Bivens* claim is unavailable here.[15]

The Individual Defendants' argument that a *Bivens* action is not appropriate in this case is, at bottom, an argument that Ms. Malinowski lacks a private right of action to sue the Individual Defendants for alleged violations of the United States Constitution.[16]   This dismissal argument falls under Federal Rule of Civil Procedure 12(b)(6).[17]   In evaluating such an argument, the Court

---

[8] *See* Compl. (Doc. 1) ¶¶ 287–93.

[9] *See id.* ¶¶ 294–301.

[10] *See id.* ¶¶ 302–08.

[11] *See id.* ¶¶ 309–19.

[12] *See* Individual Defs.' Mot. to Dismiss (Doc. 25).

[13] *See* Individual Defs.' Br. in Supp. of Mot. to Dismiss (Doc. 26) at 8–20.  The Individual Defendants also argue that, even if a *Bivens* claim were available, the Individual Defendants would be entitled to qualified immunity under the circumstances of this case.  *See id.* at 20–38.

[14] *See* Resp. to Individual Defs.' Mot. to Dismiss (Doc. 38) at 9–24.

[15] Because a *Bivens* claim is unavailable here, the Court has no need to formally analyze the qualified immunity issue.

[16] *See* Individual Defs.' Br. in Supp. of Mot. to Dismiss (Doc. 26) at 8 ("The Court should grant this motion because special factors counsel against recognizing an implied cause of action under *Bivens* . . . .").

[17] *See* FED. R. CIV. P. 12(b)(6); *Ahmed v. Weyker*, 984 F.3d 564, 567 (8th Cir. 2020).

must accept all non-conclusory facts alleged in the Complaint as true, take all reasonable inferences from those alleged facts in favor of Ms. Malinowski, not consider record facts outside the Complaint (except for materials embraced by the Complaint), and determine whether the allegations plausibly suggest a claim upon which relief can be granted.[18]

---

[18] *See Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768–69 (8th Cir. 2012). A document is embraced by a complaint when, among other things, it is "incorporated by reference or integral to the claim . . . ." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)). In this case, the parties dispute which materials outside the Complaint can be considered for purposes of deciding the instant Motion. *Compare* Individual Defs.' Mot. to Dismiss (Doc. 26) at 5, 7, *with* Dec. 5, 2025 Hr'g Tr. (rough) at 3:19:36–3:22:47. As discussed in Court's first Order, the following materials are embraced by the Complaint:

- Order Granting Probate of [Mr. Malinowski's Will] and Appointment of Personal Representative, *see* Ex. A (Probate Order) to Compl. (Doc. 1) at 73–76;

- Letter from House Judiciary Chairman Jim Jordan to the Director of ATF, *see* Ex. B (House Judiciary Letter to ATF (April 22, 2024)) to Compl. (Doc. 1) at 77–81 (embraced to the extent that the Court accepts as true that Chairman Jordan wrote the letter provided). The Court does not treat Chairman Jordan's description of the events in question as allegations of fact unless they are independently alleged in the body of the Complaint itself;

- Transcript of a hearing of the House Judiciary Select Subcommittee on the Weaponization of the Federal Government, *see* Ex. C (House Judiciary Select Subcommittee Hearing (May 22, 2024)) to Compl. (Doc. 1) at 82–155 (embraced to the extent that the Court accepts as true that the hearing took place and unfolded as reflected in the transcript). The Court does not treat any statements in the transcript as allegations of fact unless (1) they are independently alleged in the body of the Complaint itself, or (2) the statements constitute a statement against interest by any of the Individual Defendants or ATF;

- Transcript of a House Judiciary Hearing, *see* Ex. D (House Judiciary Hearing (May 22, 2024)) to Compl. (Doc. 1) at 156–236 (considered in the same way as Exhibit C);

- Affidavit for the search warrant and the search warrant itself, *see* Defs.' Joint Ex. 1 (ATF Application and Search Warrant) to Individual Defs.' Mot. to Dismiss (Doc. 27);

- Any audio or video that directly recorded the events at the Malinowski home on the morning of March 19, 2024, *see* Defs.' Joint Ex. 2 (Little Rock Police Dep't Audio from Motor Vehicle Recording) to Individual Defs.' Mot. to Dismiss (Doc. 27);

- Any audio or video that directly recorded the alleged detention of Ms. Malinowski in the aftermath of the shooting of Mr. Malinowski, *see id.*; and

- The two exhibits Defendants submitted under seal, *see* Sealed Joint Ex. 11 (ATF Order 3220.1B, Searches and Examinations) and Sealed Ex. 12 (ATF Order 8200.3C, Post Shooting and Use of Force Reporting and Review Procedures) to Individual Defs.' Mot to Dismiss (Doc. 27) (embraced to the extent they demonstrate that ATF has internal policies and procedures).

All other exhibits are not embraced by the Complaint, including the full audio recordings of the Arkansas State Police interviews. *See* Defs.' Joint Ex. 3 (ATF Agent Shannon Hicks Audio Statement) to Individual Defs.' Mot. to Dismiss (Doc. 27); Defs.' Joint Ex. 4 (ATF Agent Timothy Boles Audio Statement) to Individual Defs.' Mot. to Dismiss (Doc. 27); Defs.' Joint Ex. 5 (Maria Malinowski Audio Statement) to Individual Defs.' Mot. to Dismiss (Doc. 27); Defs.' Joint Ex. 6 (ATF Agent Matthew Sprinkles Audio Statement 1) to Individual Defs.' Mot. to Dismiss (Doc. 27); Defs.' Joint Ex. 7 (ATF Agent Matthew Sprinkles Audio Statement 2) to Individual Defs.' Mot. to Dismiss (Doc. 27); Defs.' Joint Ex. 8 (ATF Agent Amy Ness Audio Statement) to Individual Defs.' Mot. to Dismiss (Doc. 27); Defs.' Joint Ex.

The Court's first Order set out the background facts that (for now) the Court must accept as true under the legal standard just described.  Therefore, rather than reinventing the wheel for the instant Order, the Court adopts and incorporates here the facts set out in Section II.A. of the Court's first Order.[19]  And with those facts in mind, the Court turns to the legal analysis of the Individual Defendants' Motion to Dismiss.

## II.    LEGAL ANALYSIS

The Supreme Court has instructed lower courts to refrain—in all but the rarest of circumstances—from recognizing new causes of action under *Bivens*.[20]  Still, it has yet to "dispense with *Bivens* altogether."[21]  What courts are left with is an analysis that essentially ensures that 99 percent of *Bivens* claims will fail.

Formally (but perhaps not realistically) it's a two-step analysis.  At step one, a court must determine "whether the case presents a new *Bivens* context . . . ."[22]  A case presents a new *Bivens* context if the case is "'meaningful[ly]' different from the three cases in which the [Supreme] Court

---

9 (ATF TFO Michael Gibbons Audio Statement) to Individual Defs.' Mot. to Dismiss (Doc. 27); Defs.' Joint Ex. 10 (ATF Agent Tyler Cowart Audio Statement) to Individual Defs.' Mot. to Dismiss (Doc. 27).  A fuller explanation of the Court's reasoning on this issue is provided in footnote 40 of the Court's first Order.  *See* June 17, 2026 Order (Doc. 50) at 8–9 n.40.

[19] *See* June 17, 2026 Order (Doc. 50) at 10–25.  Although the first Order addressed a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the facts laid out in Section II.A. of that Order apply the same 12(b)(6) standard at play in the instant Order.  *See Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) ("In a [Rule 12(b)(1)] facial attack, 'the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990))).  Thus, the facts set out in that Section are the same facts that the Court must apply to the Individual Defendants' 12(b)(6) dismissal motion.

[20] *See Egbert*, 596 U.S. at 491 ("[R]ecognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017))); *Goldey*, 606 U.S. at 944 ("This Court has repeatedly emphasized that recognizing a cause of action under *Bivens* is a disfavored judicial activity." (internal citations and quotations omitted)).

[21] *Egbert*, 596 U.S. at 491.

[22] *Id.* at 492 (internal quotations omitted).

has implied a damages action."[23]    And the phrase "meaningfully different" has a capacious

definition.  In *Ziglar v. Abbasi*, the Court explained that:

> A case might differ in a meaningful way because of the rank of the officers
> involved; the constitutional right at issue; the generality or specificity of the official
> action; the extent of judicial guidance as to how an officer should respond to the
> problem or emergency to be confronted; the statutory or other legal mandate under
> which the officer was operating; the risk of disruptive intrusion by the Judiciary
> into the functioning of other branches; or the presence of potential special factors
> that previous *Bivens* cases did not consider.[24]

Even these examples are not exhaustive.[25]  A case can also be meaningfully different because it

involves a "category of defendants" that were absent from cases where the *Bivens* remedy was

approved.[26]    Or a case can be meaningfully different because the "sorts of actions being

challenged" are different from the actions that were successfully challenged in an earlier *Bivens*

case.[27]    Or a case can be meaningfully different because "the mechanism of injury" is different

from an earlier case.[28]  Or a case can be meaningfully different because "the kinds of proof those

injuries would require" is different from an earlier case.[29]  Even one meaningful difference—

whether one of the examples above or some other difference—is enough.  And the difference does

not have to be large—or substantial—to qualify.  "Even 'small' differences can be 'meaningful.'"[30]

---

[23] *Id.* (quoting *Ziglar*, 582 U.S. at 139).

[24] 582 U.S. at 139–40.

[25] *See Egbert*, 596 U.S. at 492–93 ("We have never offered an exhaustive accounting of such scenarios, however, because no court could forecast every factor that might counsel hesitation.  Even in a particular case, a court likely cannot predict the systemwide consequences of recognizing a cause of action under *Bivens*." (internal citations and quotations omitted)).

[26] *Egbert*, 596 U.S. at 492.

[27] *Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2019).

[28] *Id.*

[29] *Id.*

[30] *Ahmed*, 984 F.3d at 568 (quoting *Ziglar*, 582 U.S. at 149)); *Cf. Egbert*, 596 U.S. at 503 (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself.").  Granted, the Supreme Court has said that "[s]ome differences . . . will be so trivial that they will not suffice to create a new *Bivens* context."  *Ziglar*, 582 U.S. at 149.  But the Supreme Court has simultaneously stressed that "the new-context inquiry"

That's because binding precedent sends judges a loud and clear message to exercise extreme caution in extending *Bivens* "no matter how 'modest' the extension may be . . . ."[31]

Where a court concludes that a case presents a new *Bivens* context, step two requires that the court next determine whether "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"[32]   For this step, "*[i]f there is even a single reason to pause* before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy."[33]   As one might imagine, "[i]t does not take much to make [a court] pause . . . ."[34]   That's because, "[i]n most instances, . . . [Congress] is in the better position to consider if the public interest would be served by imposing a new substantive legal liability."[35]

Here are some "special factors" that have in the past led to the rejection of a *Bivens* claim at step two: (1) recognizing a *Bivens* action "would require courts to interfere in an intrusive way with sensitive functions of the Executive Branch";[36] (2) "Congress has taken other action in the

---

is intended to be and is "easily satisfied" because of the "Court's expressed caution about extending the *Bivens* remedy . . . ." *Id.*   And the Court has made clear that a difference is not "trivial" just because it is "small." *See id.*

[31] *Farah*, 926 F.3d at 500 (quoting *Ziglar*, 582 U.S. at 147).   Indeed, a case can constitute "a new *Bivens* context" despite having a great deal of similarities to a previous successful *Bivens* case. *See, e.g.*, *id.* at 499–500 ("To be sure, similarities exist.   *Bivens* involved alleged violations of the Fourth Amendment's prohibition on unreasonable searches and seizures, and so do these cases.   But treating all search-and-seizure cases the same would contradict the Supreme Court's direction that a context can be new even if it involves the same constitutional right as an existing case.   Nor is the context the same just because Weyker and the agents in *Bivens* were 'street-level' investigators whose alleged misconduct only impacted a single investigation . . . .   It is true . . . that the Supreme Court emphasized the rank of the officers involved and the generality or specificity of the official action in [*Ziglar*].   Even so, the Court left no doubt that these were just two features among many that could meaningfully differentiate potential causes of action." (internal citations and quotations omitted)).

[32] *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 136).

[33] *Id.* (emphasis added) (internal quotations omitted); *Farah*, 926 F.3d at 500 ("According to the Supreme Court, we must . . . determine at the second step whether anything about these cases 'causes [us] to pause before acting without express congressional authorization.'" (alteration in original) (quoting *Ziglar*, 582 U.S. at 137)).

[34] *Farah*, 926 F.3d at 500.

[35] *Id.* (quoting *Ziglar*, 582 U.S. at 136).

[36] *Ziglar*, 582 U.S. at 141.

area without authorizing a damages remedy";[37] (3) "a 'remedial structure' is already in place to address constitutional violations, even if it does not go as far as a *Bivens* remedy would";[38] and (4) there is "uncertainty" regarding the "consequences of recognizing a cause of action under *Bivens*."[39]    When any of these factors, or any similar factor, exists, it is "less probable that Congress would want the Judiciary to entertain a damages suit."[40]  And "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III."[41]

As the Supreme Court has recently acknowledged, this two-step analysis "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy."[42]  That is, in these types of cases, "the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?"[43]  And if the answer to that question is Congress, then "no *Bivens* action may lie."[44]

So, how does all this cash out in the case at bar?  The long and short of it is that, under the current test for the propriety of a *Bivens* action, Ms. Malinowski's claims against the Individual

---

[37] *Farah*, 926 F.3d at 500.

[38] *Id.* (quoting *Ziglar*, 582 U.S. at 137).

[39] *Egbert*, 596 U.S. at 493.

[40] *Farah*, 926 F.3d at 500 (quoting *Ziglar*, 582 U.S. at 136–37).

[41] *Ziglar*, 582 U.S. at 137.  The precedent speaks in the language of congressional thought, desire, or intent.  The Court faithfully applies that precedent without regard to whether the thoughts, desires, or intent of a multi-member, multi-house body is really possible to determine.

[42] *Egbert*, 596 U.S. at 492.

[43] *Id.* (quoting *Hernandez*, 589 U.S. at 114); *see also Ahmed*, 984 F.3d at 565 ("[W]ho gets to make the call about whether a federal remedy is available? . . . [That] decision lies with Congress, not us . . . .").

[44] *Egbert*, 596 U.S. at 492.

Defendants must be dismissed.  The claims present a new *Bivens* context.  And there are special

factors that give the Court pause in applying *Bivens* in this new context.

Let's start with the question whether the claims at issue present a new *Bivens* context.

Ms. Malinowski contends that there is no meaningful difference between her claims and the claims

at issue in *Bivens* itself.[45]  As was true in *Bivens*, Ms. Malinowski's claims against the Individual

Defendants are based on alleged Fourth Amendment violations.[46]  As was true in *Bivens*, the claims

at issue in this case involve federal agents invading the privacy of a home.[47]  And, as was true in

*Bivens*, the claims at issue in this case involve federal agents taking adverse action against an

individual in front of his family.[48]  Despite these (and any other) similarities, however, there are

meaningful differences between the claims in the two cases.

The first difference is that this case involves a new category of defendants.  The defendants

in *Bivens* were agents of the Federal Bureau of Narcotics, which eventually became the Drug

Enforcement Agency (DEA).[49]  The Individual Defendants in the instant case are either members

of ATF or part of the ATF Task Force.  And as far as the Court can tell, a *Bivens* action has never

been authorized by the Supreme Court or the Eighth Circuit against ATF agents or persons on an

---

[45] *See* Resp. to Individual Defs.' Mot. to Dismiss (Doc. 38) at 11–16.  Ms. Malinowski does not try to fit her claims into any other prior successful *Bivens* case.  *See id.*

[46] *Compare* Compl. (Doc. 1) ¶¶ 287–319, *with Bivens*, 403 U.S. at 389.

[47] *See Bivens*, 403 U.S. at 389.

[48] *See id.*

[49] *See id.* ("[Defendants], agents of the Federal Bureau of Narcotics acting under claim of federal authority . . . .").  The Bureau of Narcotics eventually became the Drug Enforcement Agency.  *See Gonzales v. Raich*, 545 U.S. 1, 12 n.18 (2005) ("In 1973, the Bureau of Narcotics and Dangerous Drugs became the DEA." (citing 28 C.F.R. § 0.100)).

ATF Task Force.[50]   Under *Egbert v. Boule*, this seems to count as a meaningful difference.[51]

DEA's scope of work is different from ATF's scope of work.  DEA primarily deals with drug

crimes.[52]  ATF primarily deals with crimes involving firearms, explosives, and arson.[53]  It is not

beyond the pale to think that the differences in the remit of each organization could lead to different

congressional policy choices regarding the availability and scope of private rights of action for

alleged constitutional violations by members of each organization.  The differences in the two

organizations may be small, but the Court cannot say they are trivial.[54]

---

[50] Ms. Malinowski points to *Groh v. Ramirez* to assert that the Supreme Court has in fact "heard a case involving a *Bivens* claim against . . . ATF [agents]."  *See* Resp. to Individual Defs.' Mot. to Dismiss (Doc. 38) at 16 (citing *Groh v. Ramirez*, 540 U.S. 551 (2004)).  It's fair to say that *Groh* involved a *Bivens* action.  *See Groh*, 540 U.S. at 556 ("Respondents sued petitioner and other officers under *Bivens*[,] . . . and Rev. Stat. § 1979, 42 U.S.C. § 1983, raising eight claims, including violation of the Fourth Amendment.").  And it is true that an ATF agent was a defendant in that case.  *See id.* at 554.  But, critically, *Groh* does not discuss *Bivens* beyond acknowledging that the plaintiff had—in addition to other claims—asserted a *Bivens* claim.  Indeed, as Ms. Malinowski concedes in her Brief, the *Groh* decision was based on qualified immunity grounds, not *Bivens*.  *See* Resp. to Individual Defs.' Mot. to Dismiss (Doc. 38) at 16 (citing *Groh*, 540 U.S. 551).  The fact that the *Groh* case involved a *Bivens* claim and that an ATF agent was a defendant, without more, is insufficient to demonstrate that the Supreme Court has authorized a *Bivens* action against an ATF agent.  *Cf. Annappareddy v. Pascale*, 996 F.3d 120, 136 n.9 (4th Cir. 2021) (noting that, although *Groh* "grappled with a *Bivens* claim[,]" *Bivens* was not discussed in *Groh* because "no party . . . questioned the existence of a *Bivens* remedy, so the Court seemed only to assume—and was not called on to decide—that the plaintiffs should be able to proceed with that claim").

[51] *See Egbert*, 596 U.S. at 495 ("That this case does not involve a cross-border shooting, as in *Hernandez*, but rather a more 'conventional' excessive-force claim, as in *Bivens*, does not bear on the relevant point.  Either way, the Judiciary is comparatively ill suited to decide whether a damages remedy against any Border Patrol agent is appropriate."); *id.* at 496 ("As in *Hernandez*, . . . we ask here whether a court is competent to authorize a damages action . . . against Border Patrol agents generally."); *id.* at 511 (Sotomayor, J., dissenting in part) ("The only arguably salient difference in 'context' between this case and *Bivens* is that the defendants in *Bivens* were employed at the time by the (now-defunct) Federal Bureau of Narcotics, while Agent Egbert was employed by [Customs and Border Protection].").  As the Court acknowledged during the December 5, 2025 motion to dismiss hearing, the Court does not entirely understand the reasoning behind the new-category-of-defendant factor.  It is not easy to understand why the federal agents' actions in this case are "meaningfully different" from federal agent actions in other cases merely by virtue of the agency for which they work.  *See* Dec. 5, 2025 Hr'g Tr. (rough) at 4:04:23–4:08:41.  But the Supreme Court has made clear that the question is not about what the defendants are doing in a particular case.  Rather, it is about who the defendants are as a general matter.  *See Egbert*, 596 U.S. at 495–96.

[52] *See* DEA, *About*, https://www.dea.gov/who-we-are/about (last visited July 3, 2026) ("The mission of the [DEA] is to enforce the controlled substances laws and regulations of the United States . . . .").

[53] *See* ATF, *About ATF*, https://www.atf.gov/about (last visited July 3, 2026) ("ATF protects American communities from violent crime driven by the illegal use of firearms, explosives, and acts of arson.").

[54] Ms. Malinowski argues that the way in which the Eighth Circuit has decided certain *Bivens* cases implies that the Eighth Circuit generally does not treat a new category of defendant as a "meaningful difference" between a given case and *Bivens*.  *See* Resp. to Individual Defs.' Mot. to Dismiss (Doc. 38) at 16–19.  Specifically, Ms. Malinowski notes that, although "[t]he defendant in *Farah* and *Ahmed* was . . . allegedly acting as a deputized U.S. Marshal[,]" the Eighth Circuit did not rely on that fact in its meaningful-difference analysis.  *Id.* at 18.  Instead, the Eighth Circuit

The second difference involves the nature of the claims in *Bivens* and the nature of the claims in our case.  In *Bivens*, the Fourth Amendment claims were unreasonable search, unreasonable seizure, and excessive force.[55]  The conduct that supposedly underlay these claims was, essentially, that agents of the Federal Bureau of Narcotics: (1) entered an apartment without a search warrant; (2) searched the apartment "from stem to stern" without a search warrant; (3) "manacled" the suspect in front of his wife during the warrantless search; and (4) arrested the suspect without probable cause.[56]  This is a far cry from our case, where everyone agrees the agents had a lawful search warrant.[57]

Some of the claims in our case are predicated on and/or derivative of an alleged knock-and-announce violation.[58]  Failing to wait a long enough time to forcibly enter a residence pursuant to a lawful search warrant is a meaningfully different mechanism of injury than is entering a residence without a lawful search warrant.[59]  It is not beyond the pale to think that Congress would treat differently—with respect to the availability or scope of a private right of action—a situation where agents had no warrant from a situation where agents merely moved too quickly on a lawful warrant.  Among many other things, while the warrant requirement is actually expressed in the

---

relied on other differences.  *See id.*  Ms. Malinowski's argument suffers from faulty logic.  That the Eighth Circuit cases cited by Ms. Malinowski relied on differences other than the category of defendant at issue does not suggest that the category of defendant at issue is trivial.  All it suggests is that the Eighth Circuit homed in on other factual distinctions between those cases and *Bivens*.  There is no reason to think that, in *Farah* and *Ahmed*, the Eighth Circuit was trying to provide an exhaustive list of meaningful differences or trying to discuss every meaningful difference at play in those cases.

[55] *See Bivens*, 403 U.S. at 389.

[56] *See id.*

[57] *See* June 17, 2026 Order (Doc. 50) at 40 ("No one disputes that ATF obtained a valid warrant from a Magistrate Judge permitting a search of the Malinowski home.").

[58] *See* Compl. (Doc. 1) ¶¶ 287–93 (Count I – Failure to Knock-and-Announce); *id.* ¶¶ 294–301 (Count II – Unlawful Entry); *id.* ¶¶ 302–08 (Count II – Use of Excessive Force).

[59] *See Farah*, 926 F.3d at 500.

text of the Fourth Amendment, the knock-and-announce requirement is not.[60]  They are simply

two different types of Fourth Amendment violations.[61]

Some of the claims in our case involve federal agents being shot at, returning fire, and

killing a home-occupant.[62]  *Bivens* did not involve any such conduct.[63]  The agents in *Bivens* were

never in danger, and nothing required them to make snap decisions (let alone life-or-death snap

decisions).[64]  It is not beyond the pale to think that Congress would take a different approach on

private rights of action in these two very different situations.  Among the many reasons for this is

that (1) generally speaking, the financial exposure of agents in a shooting-death case is going to

---

[60] *See* U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.").  Ms. Malinowski cites *Hudson v. Michigan*, 547 U.S. 586 (2006), for the proposition that the Supreme Court "has specifically contemplated individual officer civil liability" for knock-and-announce violations.  *See* Resp. to Individual Defs.' Mot. to Dismiss (Doc. 38) at 12.  But not only is *Hudson*'s suggestion dicta, it's old dicta that is inconsistent with the Supreme Court's more recent *Bivens* precedent.  The same is true of *United States v. Acosta*, 502 F.3d 54 (2d Cir. 2007).

[61] Ms. Malinowski argues that "[n]either the Supreme Court nor the Eighth Circuit have held that the existence of a warrant presents a new *Bivens* context."  *See* Resp. to Individual Defs.' Mot. to Dismiss (Doc. 38) at 14.  But that gets things backwards.  Ms. Malinowski does not point the Court to any Supreme Court or Eighth Circuit precedent that has affirmatively held that the presence of a warrant is insufficient to distinguish a case from *Bivens*.  And given the Supreme Court's capacious treatment of the term "meaningful difference," there is every reason to think that the existence of a warrant is a meaningful difference.  *See supra* pp. 7–9.  Ms. Malinowski points to three out-of-circuit cases to support her position that the existence of a warrant does not present a new *Bivens* context.  *See id.* at 15 (first quoting *Arias v. Herzon*, 150 F.4th 26, 37 (1st Cir. 2025); then quoting *Snowden v. Henning*, 72 F.4th 237, 246–47 (7th Cir. 2023); and then quoting *Logsdon v. United States Marshal Serv.*, 91 F.4th 1352, 1357 (10th Cir. 2024)).  But these cases are particularly unpersuasive.  As the Tenth Circuit highlighted, "[s]everal other circuits have said that a new *Bivens* context [does] exist[] when federal officials execute a valid warrant."  *Logsdon*, 91 F.4th at 1357–68 (collecting cases).  The Fourth, Fifth, and Sixth Circuits have found a new *Bivens* context to exist in part because of the presence of a valid warrant.  *See Annappareddy*, 886 F.3d at 135; *Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019); *Cain v. Rinehart*, No. 22-1893, 2023 WL 6439438, at *3 (6th Cir. July 25, 2023).  These cases are more persuasive to the Court, especially in light of the Supreme Court's recent *Bivens* precedent.  *See supra* pp. 7–9.  Ms. Malinowski also points to *Martin v. Gourneau*, a case from the District of North Dakota, to support her argument that the existence of a warrant does not present a new *Bivens* context.  *See* Resp. to Individual Defs.' Mot. to Dismiss (Doc. 38) at 15 (citing *Martin*, No. 3:22-cv-136, 2024 WL 1640945 (D.N.D. Feb. 28, 2024), *report and recommendation adopted*, No. 3:22-cv-136, 2024 WL 1637539 (D.N.D. Apr. 16, 2024), *aff'd*, No. 24-2207, 2025 WL 687032 (8th Cir. Mar. 4, 2025), *reh'g denied*, No. 24-2207, 2025 WL 1467463 (8th Cir. May 22, 2025)).  But that case does nothing to support Ms. Malinowski's argument because it contains no discussion regarding the-existence-of-a-warrant issue.

[62] *See* Compl. (Doc. 1) ¶¶ 302–08 (Count III – Use of Excessive Force).

[63] *See generally Bivens*, 403 U.S. 388.

[64] *See generally id.*

14

be much higher than in a run-of-the-mill warrantless search-and-seizure case, and (2) the consequences of accidentally chilling the lawful conduct of law enforcement officers as a byproduct of authorizing private rights of action is most serious where the lawful conduct is returning fire when fired upon.

Some of the claims in our case involve the detention of a home occupant even though the detained occupant was not a suspect.[65] *Bivens*, as described by the Supreme Court, did not involve such an issue.[66] Of course, Mr. Bivens was allowed to sue for being detained.[67] But that's because the agents had no search warrant and thus no authority to detain him.[68] The Supreme Court is clear that a lawful search warrant carries with it the constitutional authority to detain occupants on the premises during the search.[69] In the case at bar, the existence of a valid search warrant gave law enforcement the authority to detain Ms. Malinowski during the search.[70] The issue in our case is whether the delay in the search caused by the shooting turned Ms. Malinowski's lawful detention into an unlawful one.[71] That is a much more nuanced issue than the don't-search-or-detain-without-a-search-warrant issue in *Bivens*. Congress could easily see a reason to treat the two issues differently in terms of authorizing a private right of action for the conduct alleged.

---

[65] *See* Compl. (Doc. 1) ¶¶ 309–19 (Count IV – Illegal Detention).

[66] *See generally Bivens*, 403 U.S. 388.

[67] *See id.* at 397.

[68] *See id.* at 389.

[69] *See Michigan v. Summers*, 452 U.S. 692, 703 (1981); *Mountain Pure, LLC v. Roberts*, 814 F.3d 928, 934 (8th Cir. 2016).

[70] *See* June 17, 2026 Order (Doc. 50) at 38–46.

[71] *See id.* at 40–41 ("No one disputes that ATF obtained a valid warrant from a Magistrate Judge permitting a search of the Malinowski home. Accordingly, during the search, ATF could constitutionally detain Ms. Malinowski as an occupant of the premises to be searched. The stickier issue is whether Ms. Malinowski's detention was unreasonably prolonged.").

15

Finally—and this goes to all the claims at issue in today's Order—*Bivens* did not involve a task force.[72]  Our case does.  Some of the Individual Defendants are state/local law enforcement who would only be exposed to this *Bivens* action—if it were viable—because they and their agencies agreed to work with ATF.[73]  That means, unlike in *Bivens*, recognizing a *Bivens* remedy in the instant case directly implicates federal-state relationships and whether ATF will be able to persuade state and local agencies to work under its direction in the future.  This is a meaningful difference between our case and *Bivens* for purposes of the step-one analysis.

The foregoing is not an exhaustive list of the differences (or similarities) between this case and *Bivens*.  But it is sufficient to demonstrate that, under governing Supreme Court precedent, each of the claims in this case presents a new *Bivens* context.  So, the Court proceeds to the step-two analysis.  It should not surprise anyone, however, that there is a fair amount of bleed-over from step one to step two.  This makes eminent sense in light of the Supreme Court's reminder that, "[w]hile [its] cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy."[74]

There are "special factors" present in this case "indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing" Ms. Malinowski's *Bivens* action to proceed.[75]  As the Court has already indicated above in its step-one analysis, there are various policy reasons to consider treating the claims in this case differently from the claims in *Bivens* with respect to the availability and scope of a private right of action.  Which policy path to choose comes down to value judgments and unscientific predictions.  Some

---

[72] *See generally Bivens*, 403 U.S. 388.

[73] Individual Defendants Michael Gibbons and Chris Griggs fall into this category.  *See* Compl. (Doc. 1) ¶¶ 33–34.

[74] *Egbert*, 596 U.S. at 492.

[75] *Id.* (internal quotations omitted).

entity is going to have to weigh (1) the right of citizens to seek compensation from federal actors that unconstitutionally harm them against (2) society's need for good people to seek federal employment and (3) society's need to avoid over-chilling federal action. Some entity is going to have to make determinations about how the deterrence-of-misconduct effect of authorizing private lawsuits matches up against the chilling-of-lawful-conduct effect of such lawsuits. Whatever entity makes all these determinations, it is obvious that there is more than one reasonable way to come out on these questions.

The existence, or even potential existence, of more than one reasonable policy choice means that judicial imposition of a private right of action would raise serious separation-of-powers concerns.[76] These are inherently legislative judgments, not legal ones. The right answer is not ordained by the Constitution, another legal text, or some other objective legal authority or standard. The elected branches—fully accountable for their choices to the people of this country—are the ones that are supposed to make the policy choices under which we all live.[77] Unelected—and thus mostly unaccountable—judges are not.

As a general matter, the Judiciary should refrain from finding an implied private right of action where Congress has given none.[78] The political branches are in a much better position to address the myriad policy questions that underlie the determination of whether, when, and to what extent a citizen should be able to sue ATF agents for actions such as the ones alleged in this case. Notably, Congress has already held two hearings related to the events that led to this lawsuit.[79]

---

[76] *See Goldey*, 606 U.S. at 944 ("[Step two of the *Bivens*] analysis is anchored in 'separation-of-powers principles.'" (quoting *Ziglar*, 582 U.S. at 135)).

[77] *See Biden v. Nebraska*, 600 U.S. 477, 516 (2023) (Barrett, J., concurring) ("[W]hen it comes to the Nation's policy, the Constitution gives Congress the reins—a point of context that no reasonable interpreter could ignore.").

[78] *See supra* note 7.

[79] *See* Ex. C (House Judiciary Select Subcommittee Hearing (May 22, 2024)) to Compl. (Doc. 1) at 82–155; Ex. D (House Judiciary Hearing (May 22, 2024)) to Compl. (Doc. 1) at 156–236. Ms. Malinowski argues that the two

17

But Congress has not explicitly authorized a private right of action against ATF agents (or even federal officers generally) in these circumstances. It is not the place of this Court to do so in Congress's stead.[80]

A second "special factor" present in this case is the existence of an alternative remedial structure.[81] Congress has authorized the Office of the Inspector General to investigate and report abuses by federal law enforcement—including ATF agents.[82] And ATF's Internal Affairs Division allows citizens to report instances of agent misconduct, including for "[c]ivil rights abuses involving custodial deaths, denial of rights, . . . or excessive use of force . . . ."[83] In *Egbert*, an

---

congressional hearings "were not meant to create any kind of redress for Defendants' actions or remedy for the Malinowskis' injuries[,]" and that they were instead "meant to investigate the underlying facts and provide Congressional remonstration." *See* Resp. to Individual Defs.' Mot. to Dismiss (Doc. 38) at 20. Ms. Malinowski may very well be correct that the two congressional hearings did not result in (and were not intended to result in) redress or policy changes. *See id.* at 21. But that doesn't alter the fact that holding multiple congressional hearings related to the events of this case demonstrates Congress's knowledge of and interest in the policy questions arising from this case.

[80] *See supra* note 7. Among other problems, judicial recognition of a *Bivens* remedy in this case may end up intruding upon both the legislative and executive roles in enacting laws, regulations, and policies governing ATF's operating procedures. How should ATF handle an occupant who was present during an agent-involved shooting that interrupted execution of a search warrant? What exact process must ATF agents follow when preparing to execute a search warrant in a home? What is the best practice for cooperating with local police when an operation goes haywire? These are just a few of the questions that might be removed (in full or in part) from executive and legislative purview by judicial fiat.

[81] Contrary to the Individual Defendants' contention, the FTCA is not an alternative remedial system for *Bivens* claims. *See* Individual Defs.' Br. in Supp. of Mot. to Dismiss (Doc. 26) at 20. That is because "the FTCA does not cover claims against Government employees for 'violation[s] of the Constitution of the United States.'" *Egbert*, 596 U.S. at 524 n.7 (Sotomayor, J., concurring in part) (alteration in original); *Carlson*, 446 U.S. at 20 ("Congress views FTCA and *Bivens* as parallel, complementary causes of action . . . ."). The defendant in *Egbert* made the same argument (i.e., that the FTCA is an alternative remedy for constitutional claims), but the Supreme Court did "not endorse this argument." *See Egbert*, 596 U.S. at 524 n.7 (Sotomayor, J., concurring in part).

[82] *See* 5 U.S.C. § 403(a) ("There shall be at the head of each Office an Inspector General who shall be appointed by the President, by and with the advice and consent of the Senate, without regard to political affiliation and solely on the basis of integrity and demonstrated ability in . . . law . . . or investigations."); 28 C.F.R. § 0.29c(a) ("Reporting to the OIG. Evidence and non-frivolous allegations of criminal wrongdoing or serious administrative misconduct by Department employees shall be reported to the OIG, or to a supervisor or a Department component's internal affairs office for referral to the OIG . . . .").

[83] *See* ATF, *Report Employee Misconduct*, https://www.atf.gov/contact/report-employee-misconduct (last visited July 3, 2026).

agency's internal grievance policy was deemed a special factor for purposes of rejecting a *Bivens* remedy.[84]  There's no reason that analysis would not lead to the same result here.[85]

The two special factors just discussed are more than sufficient to answer "the most important question" in a *Bivens* case: "who should decide whether to provide for a damages remedy, Congress or the courts?"[86]  In this case, the answer is undoubtedly Congress. Accordingly, Ms. Malinowski's *Bivens* claims against the Individual Defendants must be dismissed.

### CONCLUSION

For the reasons stated above, the Court GRANTS the Individual Defendants' Motion to Dismiss in its entirety.[87]  The Clerk is directed to terminate Timothy Boles, Troy Dillard, Clayton Merrill, Tyler Cowart, Matthew Sprinkles, James Bass, Michael Gibbons, Chris Griggs, Shannon Hicks, and Amy Ness as party Defendants.[88]

---

[84] *See Egbert*, 596 U.S. at 497–98.

[85] Ms. Malinowski argues that ATF's remedial system "offer[s] nothing more than a complaint box upon which the Inspector General or the ATF may or may not act."  *See* Resp. to Individual Defs.' Mot. to Dismiss (Doc. 38) at 23. But whether ATF's remedial system is effective is not for this Court to decide.  *See Egbert*, 596 U.S. at 498 ("[T]he question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts.  So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy.  That is true even if a court independently concludes that the Government's procedures are not as effective as an individual damages remedy." (internal quotations omitted)).

[86] *See Egbert*, 596 U.S. at 492 (quoting *Hernandez*, 589 U.S. at 114); *see also Ahmed*, 984 F.3d at 565 ("[W]ho gets to make the call about whether a federal remedy is available? . . . [That] decision lies with Congress, not us . . . .").

[87] *See* Doc. 25.  The Court has not expressly addressed every single aspect of every single argument that Ms. Malinowski has made in support of a *Bivens* action.  But the Court has considered Ms. Malinowski's arguments fully.  Where the Court's rationale is explicitly or implicitly at odds with an argument advanced by Ms. Malinowski, the Court should be understood as having rejected Ms. Malinowski's argument.

[88] Justice Scalia once said—and the Court is paraphrasing here—that a judge who is happy with every decision he reaches is likely not a very good judge.  *See* Justice Antonin Scalia, Annual Madison Lecture at Chapman University Fowler School of Law (2005) ("If you're going to be a good and faithful judge, you have to resign yourself to the fact that you're not always going to like the conclusions you reach.  If you like them all the time, you're probably doing something wrong.").  The Court takes solace in the hope that the constitutionally proper spurning of judicially created rights of action will perhaps prod Congress to think hard about the utility and importance of legislatively enacting—to some extent—private rights of action for certain constitutional violations.

IT IS SO ORDERED this 6th day of July 2026.

LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE